EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* PEDRO RIVERA ANTUNA, acusado y apelante.

*Número:* CR-62-147     *Resuelto:* 21 de junio de 1963

Santiago C. Soler Favale, abogado del apelante; J. B. Fernández Badillo, Procurador General, Rodolfo Cruz Contreras, Sub-Procurador General, y Jenaro Marchand, Procurador General Auxiliar, abogados de El Pueblo.

Sala integrada por el Juez Asociado Señor Blanco Lugo como Presidente Accidental de Sala y los Jueces Asociados Señores Dávila y Ramírez Bages.

EL JUEZ ASOCIADO SEÑOR DÁVILA emitió la opinión del Tribunal.

Se impone la confirmación de la sentencia que condenó al apelante a sufrir un año de cárcel. Se le había acusado de causarle la muerte a Tomás Vázquez Vega al arrollarlo con un automóvil.

Para sostener el recurso interpuesto el apelante alega en primer lugar que el tribunal de instancia debió haber archivado la acusación por haber transcurrido más de sesenta días desde que fue detenido para responder del delito imputádole sin que se hubiera radicado la acusación. Art. 448, Código de Enjuiciamiento Criminal, 34 L.P.R.A. sec. 1631. El acusado apunta que fue detenido para responder del delito con fecha 11 de marzo de 1960 y la acusación fue radicada el 3 de junio siguiente.

La prueba presentada para sostener la posición del apelante al efecto de que fue detenido para responder del delito que se le imputó cuando fue llevado al cuartel por la policía el 11 de marzo, lo que realmente demuestra es que el acusado, con el propósito de demostrar su inocencia, ofreció cooperar con la policía en la investigación de unos hechos. Como expresó el juez que presidió la vista: ". . . la Corte cree que es enteramente creíble que el acusado, seguro de su inocencia, con ningún cargo en su conciencia, advertido de que se practicaba una investigación, procediera voluntariamente y acompañara a la policía en el esclarecimiento de los hechos". Ciertamente esto fue lo que ocurrió. El acusado no estuvo detenido para responder en esa primera ocasión. Le dio cierta información a la policía. Llevó a los funcionarios encargados de hacer la investigación al lugar donde estaba su automóvil. Llevaron entonces el automóvil, con la anuencia del acusado, al Cuartel General de la Policía, y allí examinaron el vehículo. Terminada esta fase de la investigación, el acusado se marchó. Fue el 13 de mayo de 1960 que el acusado fue detenido para responder. La acusación fue radicada el 3 de junio siguiente. Dentro del término estatuido por el Art. 448.

■ Se queja el apelante de que la corte no permitiera que se uniera a la defensa un abogado adicional. Cuando todavía no había sido juramentado el jurado, el abogado a cargo de la defensa anunció al tribunal que otro abogado se uniría a la defensa. El fiscal se opuso porque ya había recusado tres jurados "y tal vez hubiésemos recusado otros, quien sabe, de estar él". El juez sostuvo al ministerio público.

El Procurador General, para sostener la actuación del juez de instancia cita a *Pueblo* v. *Cruz*, 60 D.P.R. 116 (1942). En *Pueblo* v. *Cruz*, ya había comenzado a desfilar la prueba. El jurado estaba ya constituido. El fiscal no podía ya recusar a ningún jurado por el motivo de relaciones con el nuevo abogado. Pero en el presente caso el jurado no estaba constituido, no se le había tomado el juramento definitivo y el fiscal tenía la oportunidad de recusar a cualquier jurado motivadamente si se establecía las bases para ello. Ahora bien, el error cometido al no permitir que se uniera a la defensa el nuevo letrado no fue perjudicial, ya que el acusado estuvo adecuadamente representado durante el juicio.

■ El ministerio público presentó el testimonio de un policía al efecto de que cuando llevaron el automóvil del acusado al Cuartel General de la Policía un perito lo examinó y encontró unas hilachas de saco y unas escamas de pescado adheridas al motor. La prueba presentada establecía que la víctima cargaba la noche del accidente un saco lleno de pescado. El abogado defensor solicitó que se retirara al jurado para discutir la inadmisibilidad de esa prueba, pues el examen del automóvil constituía un registro, y éste se había efectuado ilegalmente. Suponiendo que el examen de un automóvil, en las circunstancias en que éste se llevó a cabo constituyó un registro, el hecho cierto es que ya había desfilado prueba en el sentido de que el acusado había accedido a que el carro fuera examinado. Con su anuencia fue llevado al cuartel y voluntariamente permitió el examen. Por lo tanto, no erró el juez al no acceder a la solicitud de la defensa. Con-

viene consignar que el fiscal ofreció en evidencia el resultado del examen, y la defensa objetó, sosteniendo el juez la objeción por el fundamento de que no compareció a declarar la persona que efectuó el examen.

Finalmente el apelante sostiene que el veredicto no está sostenido por la prueba. Lo está. Veamos.

La prueba establece que la víctima y dos compañeros caminaban por la orilla de la carretera que de Maunabo conduce a Patillas. La víctima era el último y fue arrollado por un automóvil que corría a sesenta millas por hora. El suceso ocurrió de 7:30 a 8:00 de la noche, el 8 de marzo de 1960. Uno de los compañeros declara que vio el carro aproximarse pero que luego de arrollar a la víctima, no pudo identificar al conductor. La velocidad y la oscuridad lo impedían. El otro acompañante que también fue arrollado, declara prácticamente lo mismo, pero manifiesta que pudo ver al conductor y que lo era el acusado. Manifiesta que estaba encendida la luz interior del automóvil.

Un testigo declaró que iba conduciendo su automóvil por la carretera donde ocurrió el accidente; que vio a la víctima y sus dos acompañantes que iban cada uno con un saco al hombro y al poco rato de haberlos dejado atrás vio un carro, "[oyó] un ruido, que tocaban una bocina, un carro que venía a una velocidad grandísima, una velocidad vertiginosa, tocándome bocina. . ."

Otro testigo, policía estatal declara que cuando el automóvil del acusado fue llevado al Cuartel General tres días después de ocurrido el accidente él lo examinó junto con otra persona y encontraron "en la tapa del bloque de dicho vehículo un pedazo de saco", manifestando que "el saco estaba por el lado derecho de la tapa del bloque aguantando, o sea, sosteniendo unos hilos que tenía" y que "el pedazo de saco estaba hacia el lado derecho". Declara además que sobre el pedazo de saco había unas escamas de pescado.

Además de la prueba anteriormente relatada el jurado tuvo ante su consideración el testimonio de Primitivo Márquez. Este testigo declaró que el día en que ocurrió el accidente, salió de San Juan, en el carro del acusado, que éste lo conducía y que fueron a Patillas a jugar gallos a la Gallera Providencia que está localizada cerca del sitio donde ocurrió el accidente; que allí estuvieron hasta las 6:30 ó 7:00 de la noche cuando partieron de regreso a San Juan; que en el viaje de regreso guiaba el acusado; que no tuvieron accidente alguno, pero que el radiador se rompió y el agua se salía teniendo que pararse en varias ocasiones para llenarlo de agua. No tuvieron ese problema en el viaje de San Juan a Patillas.

█ Salvo la declaración del testigo que manifestó haber identificado al acusado, cosa que dadas las circunstancias prevalecientes parecería improbable, la prueba presentada para conectar al acusado es circunstancial. Ya hemos resuelto en *Pueblo* v. *Bonilla,* 78 D.P.R. 152 (1955) la procedencia de esta clase de prueba con el requisito, claro está, de que debe establecerse la culpabilidad del acusado fuera de duda razonable. La evidencia circunstancial no es otra cosa que las inferencias que surgen de una serie de hechos probados. *Pueblo* v. *Cortés del Castillo,* 86 D.P.R. 220 (1962). ¿Qué inferencias surgen de los hechos probados según quedan relatados?

█ La prueba establece por evidencia directa que la víctima fue arrollada en la noche del 8 de mayo de 1960, de siete y media a ocho de la noche. La prueba circunstancial revela además que el acusado estaba en la Gallera Providencia ese mismo día; que esta gallera queda cerca del sitio donde ocurrió el accidente; que salió de allí de seis y media a siete de la noche; que al regresar a San Juan el carro sufrió un desperfecto en el radiador por lo que tuvieron que llenarlo de agua en varias ocasiones; que al ser examinado el automóvil tres días después, aparecía con una abolladura en la parte del frente derecha; que se encontraron hilachas de saco y es-

camas de pescado en la tapa del bloque al lado derecho. Así la prueba coloca al acusado más o menos a la hora en que ocurrieron los hechos en el sitio donde sucedieron, demuestra que esa noche el carro sufrió la rotura del radiador y tres días después al examinarlo aparece que ha sido chocado y encuentran hilachas de saco y escamas de pescado. Recuérdese que la prueba estableció que la víctima llevaba un saco de pescado al hombro.

Esta prueba creída por el jurado es suficiente para sostener el veredicto inculpatorio. Ciertamente en casos de conductores que se dan a la fuga después de un accidente (*hit and run drivers*) difícilmente se puede presentar evidencia directa que les conecte con los hechos, ni prueba circunstancial más fuerte que la presentada en este caso.

*Se confirmará la sentencia apelada.*