EL PUEBLO DE PUERTO RICO, apelado, *v.* JOSÉ A. BIGIO PAS-
TRANA, acusado y apelante.

*Número:* CR-84-63 *Resuelto:* 17 de diciembre de 1985

*Moisés Abreu Cordero,* abogado del apelante; *Américo Serra, Procurador General Interino, Justo Gorbea Varona, Procurador General Auxiliar,* abogados de El Pueblo.

EL JUEZ ASOCIADO SEÑOR HERNÁNDEZ DENTON emitió la opinión del Tribunal.

El apelante José A. Bigio Pastrana fue convicto por el delito de oferta de soborno, y apela de la sentencia bajo alegación de que no se presentó la prueba necesaria para establecer la culpabilidad más allá de toda duda razonable. Resolvemos que el tribunal de instancia no cometió el error imputado y confirmamos la sentencia.

I

La Sra. Nydia Rosario presentó una querella ante el Negociado de Investigaciones Especiales del Departamento de Justicia de Puerto Rico (N.I.E.), a los efectos de que un vecino suyo, el apelante José A. Bigio Pastrana, "vendía" certificados de nacimiento. A raíz de la querella, el N.I.E. llevó a cabo una investigación, en la cual participaron varios agentes encubiertos. Como resultado, se juró denuncia y se expidió orden de arresto contra Bigio, por el delito de oferta de soborno.[1] Art. 212 del Código Penal, 33 L.P.R.A. sec. 4363.

---

[1] En la acusación se alega que:

"El referido acusado, JOSE ANTONIO BIGIO PASTRANA, allá en o para el día 2 de noviembre de 1983 en Santurce, Puerto Rico, que forma parte del Tribunal Superior de Puerto Rico, Sala de San Juan, ilegal, voluntaria, maliciosa y criminalmente, dio por medio de Emiliano Rivera Correa a Heriberto Pellicier Cintrón, que es . . . funcionario público adscrito a la División de Registro Demográfico del Departamento de Salud, dinero o beneficio con el fin de que realizara el acto de expedir un Certifi-

Cumplidos los trámites preliminares, el juicio comenzó luego de haberse constituido y juramentado el jurado debidamente. El Ministerio Fiscal inició la presentación de la prueba de cargo con el testimonio del señor Ariz R. Velázquez Loperena, agente especial del N.I.E., quien declaró que, el domingo 30 de octubre, acompañado por la señora Rosario, el señor Daniel Chacón y la Sra. Juana Rivera visitó la residencia del señor Bigio Pastrana, funcionario de la División de Servicios Especiales del Departamento de Salud. El agente Velázquez y la señora Rivera solicitaron que les consiguiera unos certificados de nacimiento. El acusado respondió que cobraba regularmente $7, de los cuales $2.50 eran para él, $2.50 eran para el contacto y $2 para cubrir los gastos de sellos. El agente le entregó $7 y le suministró la información necesaria. La señora Rivera le entregó $3 y quedó en enviarle el resto del dinero. El acusado se comprometió a conseguirles los certificados para el otro día por la noche. Al otro día, el agente recogió el certificado en la residencia del acusado y le presentó a un amigo, el inspector Bagué, para que también le consiguiera con urgencia un certificado. El acusado los citó a su oficina en el Departamento de Salud para conseguirles rápidamente el certificado requerido.

Según el testimonio del agente Velázquez, el 2 de noviembre de 1983 se presentaron el inspector Bagué y él a la oficina de Bigio. El apelante solicitó al inspector Bagué que le diera su nombre completo, fecha y lugar de nacimiento y el nombre de sus padres. Procedió entonces a llamar por teléfono al señor Heriberto Pellicier Cintrón, empleado público adscrito a la Sección de Búsquedas del Registro Demográfico del Departa-

---

cado de Nacimiento a favor de José Antonio Bagué Ramos, que es un acto regular de su cargo o función."

También se juró denuncia contra el señor Heriberto Pellicier Cintrón por el delito de soborno. Art. 209 del Código Penal, 33 L.P.R.A. sec. 4360. Celebrada la vista preliminar contra éste, el tribunal determinó que no había causa probable para acusar. Esa vista se efectuó en un procedimiento separado al del apelante.

mento de Salud y le suministró la información que el inspector Bagué le había dado. De la prueba admitida (²) se desprende que luego el acusado salió de su oficina y entregó al Sr. Emiliano Rivera Correa, conductor del Departamento de Salud, $2 para comprar sellos, un sobre con la información sometida por el inspector Bagúe y $2. El propio señor Rivera Correa declaró que abrió el sobre y vio que tenía la información de la persona que interesaba el certificado y $2. También declaró que entregó al Sr. Heriberto Pellicier el sobre con el dinero y la información. Como a los diez minutos éste le devolvió el sobre con un certificado. Rivera Correa regresó a las oficinas del acusado y entregó a Bigio el certificado del señor Bagué. Entonces Bigio le dio a Bagué su certificado, le cobró $8 y se despidió ofreciendo sus servicios en el futuro. El señor Rivera Correa también declaró que en otras ocasiones había entregado dinero al señor Pellicier para sacar certificados.

El acusado renunció a su derecho a juicio por jurado y, terminada la presentación de la prueba de cargo, las partes

---

(²) Además del testimonio del agente Velázquez, como prueba de cargo fueron sometidos y admitidos en evidencia nueve *exhibits*. Éstos son:

1. Certificado de Nacimiento de Ariz R. Velázquez Loperena.
2. Certificado de Nacimiento de José A. Bagué Ramos.
3. Declaración Jurada prestada el 10 de noviembre de 1983 por Emiliano Rivera Correa.
4. Querella presentada ante el N.I.E. por la señora Rosario Rivera.
5. Comunicación del 1 de noviembre de 1983 suscrita por el agente Velázquez, en la cual informa al Lcdo. Tomás Colón Vázquez, Director Interino del N.I.E., sobre su labor de encubierto efectuada los días 29 y 30 de octubre de 1983.
6. Comunicación del 2 de noviembre de 1983 del agente Velázquez, en la cual informa al licenciado Colón Vázquez sobre su labor de encubierto efectuada el 1 de noviembre.
7. Comunicación del 4 de noviembre de 1983 suscrita por el inspector Bagué, en la cual informa al licenciado Colón Vázquez sobre su labor de encubierto efectuada el 1 de noviembre de 1983.
8. Comunicación del 4 de noviembre de 1983 dirigida al Lcdo. Tomás Colón Vázquez sobre la labor de encubierto de 2 de noviembre de 1983.
9. Comunicación del 16 de noviembre de 1983 dirigida al Lcdo. Juan Corchado Juarbe sobre informe de querella 287-83.

sometieron el caso a la consideración del tribunal. Dicho foro, tomando como base el testimonio oral y la prueba documental admitida, dictó fallo condenatorio por el delito imputado de oferta de soborno, y sentenció al aquí apelante a cumplir tres (3) años de reclusión. Los efectos de la sentencia dictada fueron suspendidos en virtud a lo dispuesto en la Ley de Sentencias Suspendidas, Ley Núm. 259 de 3 de abril de 1946, según enmendada, 34 L.P.R.A. sec. 1026 *et seq.*

Se apela ante esta curia la sentencia condenatoria y se señalan dos errores. El acusado apelante plantea que el juez sentenciador debió desestimar la acusación que pendía en su contra según lo dispuesto en el inciso (f) de la Regla 64 de las de Procedimiento Criminal.[3] Sostiene que como en el caso contra Pellicier Cintrón por soborno no se determinó causa probable ello constituye un impedimento colateral por sentencia, por lo que no se le podía juzgar por el delito de oferta de soborno. Sin embargo, el Código Penal prohíbe tanto el soborno como la oferta de soborno y cada uno tiene elementos esenciales que son distintos. La ley describe figuras independientes con características propias. No se trata de un delito con codelincuencia necesaria, basta con que el autor ofrezca para que se perfeccione el delito. Por estas razones este señalamiento de error es inmeritorio.

También alega que la prueba "presentada" y "admitida" no estableció más allá de duda razonable la culpabilidad del imputado. Como fundamento a tal señalamiento, sostiene que no se probó que el apelante, directamente o por medio de otra persona, diese dinero o cualquier beneficio a un funcionario público con el propósito de que éste realizase un acto regular de su oficio. Procede determinar si de la totalidad de la prueba sometida ante la consideración del tribunal surge que se probaron más allá de duda razonable todos los elementos del delito imputado.

---

[3] Ésta dispone que la acusación habrá de ser desestimada cuando la causa o alguna controversia esencial a la misma es cosa juzgada.

## II

En este caso el delito específico én controversia es el de oferta de soborno. Para entender el alcance de este delito, debemos primero examinar los antecedentes históricos del mismo.

Por siglos los pueblos han penalizado el soborno y sus distintas modalidades. El "cohecho" español; la *corruption* francesa, la *corruzione* italiana, el *bribery* angloamericano constituyen delitos de origen muy antiguo. En Roma se denominó este delito como crimen *repetundae*, por el cual las personas afectadas tenían una acción legal para recuperar lo que el funcionario obtuvo. En las XII Tablas se consideró delito capital el hecho de que el juez recibiera dinero por dictar sentencia. Posteriormente, en tiempos de Cicerón, fue atenuada la pena, para ser agravada nuevamente por Valentino. Justiniano modificó las penas en la Novela 12. Véanse J. Miró Cardona, *Borrador para un proyecto de Código Penal Puertorriqueño*, 41 Rev. Jur. U.P.R. 401, 650 (1972) ; XI International Encyclopedia of the Social Sciences 272–276 (1968).

Aunque en Inglaterra el delito fue originalmente limitado para cubrir a los jueces que en el desempeño de sus funciones aceptaban regalos, con el tiempo el castigo se extendió a todas las ramas de gobierno. R. M. Perkins y R. N. Boyce, *Criminal Law*, 3ra ed., Mineola, N.Y., The Foundation Press, 1982, pág. 527.

En España este delito se le conoce como el "cohecho". [4] Y en su Código Penal se tipifican tres tipos de cohecho: el pasivo, el activo, y el que comete un funcionario cuando se abstiene de un acto regular de su cargo. Véase E. Cuello Calón, *Derecho Penal*, 14ta ed., Barcelona, Ed. Bosch, 1975, T. II, Vol. 1, págs. 439–449.

---

[4] Desde las Partidas se sancionaba con todo rigor este delito. E. Cuello Calón, *Derecho Penal*, 14ta ed., Barcelona, Ed. Bosch, 1975, T. II, Vol. 1, pág. 439. La Novísima Recopilación también tipificó este tipo de conducta. *Novísima recopilación de las leyes de España*, Madrid, Ed. Boletín Oficial del Estado, 1976, T. V, Libro XI, Tít. I, Ley VII, pág. 171.

█ En Puerto Rico cuatro artículos del Código Penal, en la Parte Especial, reglamentan el delito de soborno y forman parte de la sección duodécima sobre los Delitos contra la Función Pública.([5]) Esta sección tipifica los delitos que violan el orden moral y los valores fundamentales de la administración pública puertorriqueña. "Esta no sufre quebrantos en su patrimonio con la actividad deshonesta de sus servidores; pero la venalidad de los mismos, que se enriquecen prevaliéndose de la autoridad del cargo que desempeñan y de las funciones que ejercen, lesionan con su conducta la dignidad y el decoro de la Administración pública." Miró Cardona, *op. cit.*, pág. 649.

Del historial legislativo del Código se desprende que en la redacción de esta sección se utilizaron sustancialmente las recomendaciones del Proyecto de 1967 del Código Penal del Dr. Francisco Pagán Rodríguez. A su vez el doctor Pagán se basó en el conocido Proyecto Peco de Argentina. J. Peco, *Proyecto de Código Penal con exposición de motivos*, La Plata, Talleres Gráficos Denbigh, 1942. En Argentina existen fundamentalmente dos figuras del cohecho, el activo y el pasivo:

> En el Derecho argentino, el cohecho pasivo, en su forma simple, consiste en aceptar promesa u ofrecimiento para realizar un acto funcional que debe ser gratuito. . . . Claro que también queda en el ámbito del cohecho el *recibir* dinero u otra dádiva; pero no se necesita tanto, bastando con acordar la retribución. Partiendo de esa figura, se define la modalidad agravada, e independientemente, el cohecho activo. El elenco se completa con la figura menor de la aceptación de dádivas, que también alcanza la forma pasiva y activa. C. Fontán

---

([5]) En Puerto Rico como en otros países se quiso proveer al estado con las herramientas jurídicas más modernas para combatir la corrupción en el Gobierno y evitar el uso de facilidades e información del Gobierno para el beneficio de un funcionario o de un tercero. Véase la sección de Delitos contra la Función Pública del Código Penal de 1974, 33 L.P.R.A. sec. 4351 *et seq.*; M. López-Rey y Arrojo, *Estudio penal y criminológico del proyecto oficial de Código Penal de 1967 para Puerto Rico*, Comisión de Derechos Civiles, 2da ed. rev., San Juan, Ed. Graficart Corp., 1969.

Balestra, *Tratado de Derecho Penal,* 2da ed., Buenos Aires, Ed. Abeledo-Perrot, 1980, T. VII, pág. 288.

## III

En el presente caso al acusado apelante se le imputó el delito de oferta de soborno en su modalidad de darle o prometerle a un funcionario o empleado público, directamente o a través de un intermediario, dinero o cualquier beneficio para que realizara un acto regular de su cargo o función, y que está tipificado en el Art. 212 como sigue:

Toda persona que directamente o por persona intermedia diere o prometiere a un funcionario o empleado público, o jurado, o árbitro, o cualquier otra persona autorizada en ley para oír o resolver una cuestión o controversia, o a un testigo, dinero o cualquier beneficio, con el fin previsto en las secs. 4360 a 4362 de este título, será sancionada con la pena de reclusión fijada en la sección correspondiente. 33 L.P.R.A. sec. 4363. ([6])

El Art. 212 condena cierta conducta antisocial e indeseable, la cual corrompe o pretende corromper al funcionario público, quien debe descargar gratuitamente las obligaciones inherentes de su cargo sin que esté de por medio emolumento

---

([6]) El Art. 209 del Código Penal dispone:

"Todo *funcionario o empleado público,* o jurado, o árbitro, o cualquier persona autorizada en ley para oír o resolver alguna cuestión o controversia, que solicite o reciba, directamente o por persona intermedia, para sí o para un tercero, dinero o cualquier beneficio, *o aceptare una proposición en tal sentido, por realizar un acto regular de su cargo o función,* será sancionado con pena de reclusión por un término fijo de nueve (9) años. De mediar circunstancias agravantes, la pena fija establecida podrá ser aumentada hasta un máximo, de quince (15) años; de mediar circunstancias atenuantes, podrá ser reducida hasta un mínimo de seis (6) años." (Énfasis suplido.) 33 L.P.R.A. sec. 4360.

La modalidad del delito de oferta de soborno por la cual se acusa al apelante, corresponde a la tipificada en el Art. 82 del Código Penal derogado, 33 L.P.R.A. sec. 272, el cual a su vez tuvo su origen en la Sec. 67 del Código Penal de California. Véase Código Penal de Puerto Rico de 1974 comentado, publicado por el Departamento de Justicia e Historial del Art. 82 del Código Penal derogado.

o cualquier beneficio adicional al que por ley le corresponde. Irreparable daño social se infligiría si el cumplimiento de los oficios del empleado público dependiese de las retribuciones impropias que elementos inescrupulosos están dispuestos a ofrecer y entregar; es el comportamiento de estos últimos el que se pretende reprimir al estatuir el delito de oferta de soborno. La gestión pública ha de realizarse sin que medie dinero o cualquier tipo de beneficio. Éstos son totalmente extraños a la sana administración pública y al efectivo funcionamiento de nuestro sistema, el cual debe ser guiado por la justicia, la ley y el orden.

Para Cuello Calón, constituye una forma de corrupción activa "el hecho de corromper o sobornar a funcionarios públicos para que realicen actos relacionados con el ejercicio de sus funciones o se abstengan de realizarlos". (7) Cuello Calón, *op. cit.*, pág. 447.

■ Son elementos esenciales del delito de oferta de soborno, en la modalidad aquí imputada, los siguientes: 1. dar u ofrecer dinero o cualquier beneficio; (8) 2. que la dación u ofrecimiento se haga a un funcionario o empleado público, ya sea directamente a él o a través de un intermediario, (9) y

---

(7) El Art. 391 del Código Penal español prohíbe el cohecho activo de la siguiente manera:

"Los que con dádivas, presentes, ofrecimientos o promesas corrompieren o intentaren corromper a los funcionarios públicos, o aceptaren sus solicitudes, serán castigados con las mismas penas que éstos, menos la de inhabilitación."

(8) En el inciso (6) del Art. 7 del Código Penal, 33 L.P.R.A. sec. 3022, se define el término "beneficio" como "[c]ualquier provecho, utilidad, ventaja, lucro, o ganancia, [y] no est[á] limitado el término a una ganancia pecuniaria o material, sino que denota cualquier forma de ventaja". Véase *Pueblo* v. *Luzón*, 113 D.P.R. 315, 320 (1982).

(9) El inciso (16) del Art. 7 del Código Penal define el término "funcionario o empleado público" como "[t]oda persona que ejerza un cargo o desempeñe una función retribuida o gratuita, permanente o temporal, en virtud de cualquier tipo de nombramiento, contrato o designación, para la rama legislativa, ejecutiva o judicial del Estado Libre Asociado de Puerto Rico, o cualquiera de sus municipios, agencias o corporaciones públicas, subdivisiones políticas y demás dependencias públicas".

3. que la dación u ofrecimiento se haga con el propósito de que dicho empleado o funcionario realice un acto regular de su cargo o función. *Pueblo* v. *Adorno*, 81 D.P.R. 518, 537 (1959); *Instrucciones al Jurado para el Tribunal Superior de Puerto Rico*, San Juan, Ed. Col. Abo. P.R., 1976, págs. 262–263.

 El autor de este delito puede ser cualquiera, inclusive un funcionario público. La ley claramente dispone que se penaliza a "toda persona" por el delito, independientemente de su posición. La conducta constitutiva del delito es dar o prometer beneficios o dinero a un funcionario para que realice o deje de realizar un acto relativo a sus funciones. El delito se configura cuando se ofrece o se da el soborno. Se viola el artículo cuando la propuesta llega al funcionario. No se requiere que el funcionario acepte el soborno; por eso no es esencial un codelincuente. Véase Fontán Balestra, *op. cit.*, pág. 301.

 El funcionario debe tener la competencia dentro de su cargo para hacer lo que se ha acordado a cambio del beneficio que se le ofrece. Al interpretar este elemento esencial del delito tenemos que reconocer que en la administración pública moderna los funcionarios realizan múltiples tareas en sus cargos, y que hay un traslapo de funciones entre ellos. En todas las agencias gubernamentales el proceso decisional y ejecutivo requiere que varias personas participen en una cadena de eventos que culmina con una decisión o un acto final que incluye desde la concesión de un certificado hasta la oferta de un servicio. En cualquiera de esas etapas los empleados de la división o dependencia a cargo de ofrecer el servicio intervienen en el trámite de las solicitudes y contribuyen de distintas maneras a la resolución del asunto. Por ejemplo, en la expedición de un certificado se requieren varios actos por diversos funcionarios desde la investigación en los archivos hasta la secretaria que pasa la información a maquinilla y el director que firma el documento.

Cada uno de ellos por su posición privilegiada en esa dependencia tiene los contactos personales para influir en la actuación gubernamental. Como parte de las funciones regulares de su cargo tiene la información y la capacidad para iniciar, retardar y hasta detener el trámite de una solicitud. Su posición requiere una lealtad inquebrantable a servir gratuitamente y a tratar equitativamente a todos los ciudadanos. La lealtad a estos postulados del servicio público forma parte de los deberes de sus respectivos cargos. (10)

Se comete el delito siempre que el acto que se interesa que se lleve a cabo esté comprendido dentro de los deberes generales del funcionario o empleado público a quien se le ofrece el soborno. El hecho de que ese funcionario comparta tareas con otros en el servicio ofrecido no exime al que ofreció el soborno de su responsabilidad penal; no hay que probar que esa persona tenía la autoridad *final* en la cadena de eventos. De lo contrario, solamente los oficiales en puestos directivos serían sobornables. Es suficiente en derecho que el acto que se interesa llevar a cabo esté comprendido entre los deberes generales del empleado según descritos en su nombramiento y conforme a las tareas que diariamente realiza. *People* v. *Guillory*, 3 Cal. Rptr. 415, 417–418 (1960); *People* v. *Longo*, 259 P.2d 53, 56 (Cal. App. 1953); *People* v. *Megladdery*, 106 P.2d 84, 102 (Cal. App. 1940); *People* v. *Lips*, 211 P. 22, 24 (Cal. App. 1922); 2 *Witkin, Calif. Crimes* Secs. 828–829 (1963); 4 *Wharton's Criminal Law* Secs. 686–687 (14ta ed. 1981);

(10) El arma más poderosa contra los que aprovechan sus posiciones y privilegios gubernamentales para su propio beneficio es la opinión pública. Los tribunales ejercen una función importante tanto punitiva como preventiva en los esfuerzos colectivos por erradicar la corrupción gubernamental. Sin embargo, el alcance de nuestros esfuerzos es limitado y tenemos que actuar con prudencia, pero con firmeza, al desempeñar nuestras funciones.

"In the last analysis, it is not the sanctions of the state, but the disciplined transformation of society to new ends and purposes, that can have a really lasting effect on corruption." XI International Encyclopedia of the Social Sciences 275 (1968).

1 *California Jury Instructions, Criminal (Cal. J.I.C.)* No. 7.10 (4ta ed. 1979).

## IV

La prueba directa presentada demostró que el apelante, que trabajaba como coordinador de viajes de la División de Servicios Especiales del Departamento de Salud, envió dinero al Sr. Heriberto Pellicier de la División de Registro Demográfico del Departamento de Salud para que expidiese, fuera del trámite normal, un certificado de nacimiento a nombre del Sr. José A. Bagué Ramos.

También quedó demostrado que el acusado había realizado anteriormente la transacción antes descrita, de igual manera con relación a otros ciudadanos que le habían solicitado que les gestionase la expedición de certificados de nacimiento. La única diferencia fue las sumas cobradas por tal gestión.

Por otra parte, la evidencia circunstancial o indirecta [11] estableció que el señor Pellicier era un funcionario del Registro Demográfico y que la expedición de los certificados de nacimiento estaba comprendida dentro del alcance general de su cargo, y al gestionar la pronta expedición de los certificados lo hacía en su capacidad oficial.

El precepto constitucional que garantiza al acusado la presunción de inocencia exige que toda convicción siempre esté sostenida por prueba que establezca más allá de

---

[11] La Regla 10(H) de las de Evidencia dispone:

"Cualquier hecho en controversia es susceptible de ser demostrado mediante evidencia directa o mediante evidencia indirecta o circunstancial. . . . Se entiende por evidencia indirecta o circunstancial aquella que tiende a demostrar el hecho en controversia probando otro distinto, del cual —en unión a otros hechos ya establecidos— puede razonablemente inferirse el hecho en controversia." 32 L.P.R.A. Ap. IV, R. 10. Hemos resuelto que una convicción puede estar válidamente sostenida por evidencia indirecta o circunstancial, siempre y cuando la culpabilidad del acusado quede establecida fuera de duda razonable. *Pueblo* v. *Picó Vidal,* 99 D.P.R. 708, 713 (1971); *Pueblo* v. *Salgado Velázquez,* 93 D.P.R. 380, 383 (1966); *Pueblo* v. *Rivera Antuna,* 88 D.P.R. 630, 635 (1963).

duda razonable todos los elementos del delito y la conexión del acusado con los mismos. ([12]) Art. II, Sec. 11 de la Constitución del Estado Libre Asociado de Puerto Rico; *Pueblo* v. *Pagán Díaz*, 111 D.P.R. 608, 621 (1981); *Pueblo* v. *Picó Vidal*, 99 D.P.R. 708, 713 (1971); *Pueblo* v. *Laboy Díaz*, 90 D.P.R. 187, 189 (1964); *Pueblo* v. *Ortiz Morales*, 86 D.P.R. 456, 466 (1962); *Pueblo* v. *Cruz Granados*, 116 D.P.R. 3, 26 (1984). (Opinión separada del Juez Asociado Señor Negrón García.) Esto no quiere decir que toda duda posible tenga que ser destruida y "que la culpabilidad del acusado tenga que establecerse con certeza matemática, sino que la evidencia" establezca "aquella certeza moral que convence, dirige la inteligencia y satisface la razón. Duda razonable es una duda fundada, producto del raciocinio de todos los elementos de juicio envueltos en el caso. No debe ser pues, una duda especulativa o imaginaria". *Instrucciones al Jurado para el Tribunal Superior, op. cit.*, pág. 42; *Pueblo* v. *Gagot Mangual*, 96 D.P.R. 625, 627 (1968).

Evaluada y ponderada cuidadosamente toda la prueba, concluimos que la misma demostró más allá de duda razonable que el acusado apelante ofreció y dio a Heriberto Pellicier, funcionario público adscrito al Registro Demográfico, dinero para que expidiese fuera del trámite dispuesto por ley, un certificado de nacimiento a nombre de José A. Bagué.

---

([12]) Existe un preponderante interés público que en casos en que se estén ventilando hechos relacionados a un acto de corrupción gubernamental o intento de corromper a un funcionario público, el Ministerio Fiscal ponga el mayor de los esfuerzos y lo mejor de sus habilidades al desempeñar su deber de procesar a los delincuentes. Lo sensitivo del interés protegido, y el cual es transgredido cada vez que se comete un acto de corrupción, le impone a los representantes del Pueblo de Puerto Rico la responsabilidad ineludible de obtener y presentar toda la prueba de que puedan legalmente valerse para establecer más allá de duda razonable la culpabilidad de las personas que se les imputa haber violado la ley. Tal deber no ha de ser evadido en ánimo de escoger el camino más sencillo y corto para la disposición final de los casos ante los tribunales. El costo social, consecuencia de tal conducta, puede resultar insufragable.

■ Por último, el Procurador General plantea en su informe que la sentencia impuesta por el tribunal de instancia en el caso de autos es menor a la mínima legalmente permitida en los Arts. 209 y 212 del Código Penal para el delito de oferta de soborno. La Regla 185 de las de Procedimiento Criminal dispone que el *"tribunal sentenciador* podrá corregir una sentencia ilegal en cualquier momento". Es en ese foro ante el cual el Procurador debe hacer su planteamiento, por lo que no ejerceremos nuestra jurisdicción para entender sobre el mismo.

Por no haberse cometido los errores apuntados, *procede la confirmación de la sentencia apelada.*