Ramos Buonomo, Jueza Ponente
*1122 TEXTO COMPLETO DE LA SENTENCIA
La apelante, Sa. Diana R. Díaz Dávila (en adelante, "Sa. Díaz Dávila") nos solicita que revoquemos la sentencia dictada en su contra por el Tribunal de Primera Instancia, Sala Superior de Bayamón, el día 10 de agosto de 1995. 
En un juicio celebrado por tribunal de derecho el tribunal la encontró culpable de tentativa de actos lascivos dictando una sentencia de cuatro (4) años bajo el régimen de sentencia suspendida. 
La Sa. Díaz Dávila alega que el tribunal apelado incurrió en los siguientes errores:

"Erró manifiestamente el tribunal, como cuestión de derecho al no conceder al acusado [sic] el beneficio de la duda razonable, vista la totalidad de la prueba en cuanto al delito imputado.

Erró manifiestamente el tribunal al no inferir que evidencia material, crítica en el caso, en posesión del Ministerio Público, no se haya presumido que le era adversa al caso del Ministerio Público. Venía obligado el Ministerio Público a hacer formar parte del récord la razón por la cual no se presentó esa pieza como evidencia para evitar dicha presunción establecida en la Ley de Evidencia.

El Ministerio Público, faltó a su deber ministerial al no poner disposición de la defensa evidencia exculpatoria, a pesar de los requerimientos de la defensa en su radicación de mociones de descubrimiento de prueba. Tal omisión afectó el derecho del acusado [sic] a una defensa adecuada y efectiva."

Por entender este Tribunal que los anteriores errores no fueron cometidos, confirmamos la sentencia apelada. Nos explicamos.
I
El Artículo II, Sección 11, de la Constitución del Estado Libre Asociado de Puerto Rico garantiza el derecho a la presunción de inocencia. Este derecho requiere que toda convicción criminal esté basada en prueba suficiente con la cual se establezcan todos los elementos del delito y la conexión del acusado con los mismos más allá de duda razonable. Pueblo v. Bigio Pastrana, 116 D.P.R. 748, 760-761 (1985). Sin embargo, esto no quiere decir que cualquier duda concebible tenga que ser destruida por el Ministerio Público y que la culpabilidad del acusado tenga que establecerse con certeza matemática. Esta garantía sólo requiere que la prueba establezca la culpabilidad con aquella certeza moral que convenza, dirija la inteligencia y satisfaga la razón del juzgador. Duda razonable es una duda fundada, producida por el análisis y la apreciación racional y ponderada de todos los elementos de juicio que surgen de la prueba presentada en un caso. No es pues, una duda especulativa o imaginaria basada en unos elementos aislados de otros. Pueblo v. Bigio Pastrana, supra, pág. 761. Sin embargo, el Ministerio Público no cumple con su responsabilidad por el hecho de que presente prueba sobre todos los elementos del delito imputado. La pmeba ofrecida tiene que ser "suficiente en derecho". Esto significa que la evidencia presentada, tiene que ser satisfactoria, tiene que producir certeza y convicción moral en una conciencia exenta de preocupación o en un ánimo no prevenido. Pueblo v. Cábán Torres, 117 D.P.R. 645, 652 (1986), citando & Pueblo v. Carrasquillo Carrasquillo, *1123 102 D.P.R. 545, 552 (1974). Cualquier insatisfacción de la conciencia del juzgador con la totalidad de la prueba es lo que se conoce como "duda razonable y fundada". Pueblo v. González Román, 95 J.T.S. 86, pág. 989; El Pueblo de Puerto Rico en interés del menor F.S.C., _ D.P.R. _ (1991), 91 J.T.S. 68, pág. 8846; Pueblo v. Cabán Torres, supra, pág. 652; Pueblo v. Toro Rosas, 89 D.P.R. 169, 175 (1963).
De este modo, la apreciación y análisis racional de la prueba constituye una cuestión mixta de hecho y de derecho. Por eso, la determinación de culpabilidad de un acusado más allá de duda razonable puede ser.revisable en apelación como cuestión de derecho .^Pueblo v. González Román, supra, pág. 989; El Pueblo de Puerto Rico en interés del menor F.S.C., supra, pág. 8846; Pueblo v. Rivero, Lugo y Almodóvar, 121 D.P.R. 454, 472 (1988); Pueblo v. Cabán Torres, supra, pág. 653. La determinación de culpabilidad la hace el juzgador de los hechos, basándose en su análisis y apreciación de la totalidad de la prueba desfilada durante el juicio. Por eso, el Tribunal Supremo de Puerto Rico ha establecido que la determinación de culpabilidad que hace el juzgador de los hechos merece una gran deferencia de parte del tribunal apelativo. Pueblo v. Cabán Torres, supra, págs. 653-654. Un tribunal apelativo puede revocar un fallo condenatorio sólo cuando un análisis racional y ponderado de la totalidad de la prueba que desfiló ante el juzgador de los hechos, le produce una duda razonable fundada y una insatisfacción de la conciencia. Pueblo v. González Román, supra, pág. 989; El Pueblo de Puerto Rico en interés del menor F.S.C., supra, pág. 8846; Pueblo v. Rivero, Lugo y Almodóvar, supra, pág. 473; Pueblo v. Marcano Pérez, 116 D.P.R. 917, 930 (1986).
La Sa. Díaz Dávila fue acusada y convicta por el delito de tentativa de actos lascivos. Se le imputó lo siguiente:

"[A]llá en o para los meses de octubre de 1994 a febrero de 1995, en Bayamón, Puerto Rico que forma parte de la jurisdicción del Tribunal Superior de Puerto Rico, Sala de Bayamón, ilegal, voluntaria, maliciosa [sicj, a sabiendas y con la intención criminal, realizó actos inequívocamente dirigidos a cometer el delito de actos lascivos con el menor [J.L.A.O.], menor de 13 años de edad, consistente [sic] en sobarle su pierna y subirle la mano hasta el muslo dirigiéndose [sic] a tocarle su miembro viril (PENE), luego de haberle dicho frases obsecenas [sic] y ofensivas al pudor. No se lograron sus propósitos por circunstancias ajenas a la voluntad de la acusada. La acusada es la maestra de séptimo [sic] grado del menor perjudicado."

Los Artículos 26 y 27 del Código Penal de Puerto Rico, disponen respectivamente, lo siguiente:

"Definición de tentativa

Existe tentativa cuando la persona realiza acciones o incurre en omisiones inequívocamente dirigidas la ejecución de un delito, el cual no se consuma por circunstancias ajenas a su voluntad.

Pena de la tentativa

Toda tentativa de delito aparejará una pena fija igual a la mitad de la pena señalada para el delito consumado, no pudiendo exceder de diez (10) años la pena máxima de la tentativa.

En la determinación de esta pena fija el tribunal deberá considerar las circunstancias atenuantes o agravantes presentes en cada caso. De mediar circunstancias agravantes, la pena fija será aumentada hasta un máximo igual a la mitad de la pena fija señalada para el delito consumado con circunstancias agravantes. De mediar circunstancias atenuantes la pena fija será reducida hasta un mínimo igual a la mitad de la pena fija señalada para el delito consumado con circunstancias atenuantes."

33 L.P.R.A. sees. 3121 y 3122.
Por su parte el Artículo 105 del Código Penal, según enmendado, dispone:

"Actos lascivos o impúdicos

*1124
Toda persona que sin intentar consumar acceso carnal cometiere cualquier acto impúdico o lascivo con otra será sancionada con pena de reclusión según más adelante se dispone si concurrieran cualesquiera de las siguientes modalidades:

(a)Si la víctima fuere menor de 14 años.

(b)Si la víctima ha sido compelida al acto mediante el empleo de fuerza física irresistible o amenaza de grave e inmediato daño corporal, acompañada de la aparente aptitud para realizarlo, o anulando o disminuyendo sustancialmente, sin su conocimiento, su capacidad de resistencia a través de medios hipnóticos, narcóticos, deprimentes o estimulantes o sustancias o medios similares.

(c) Si la víctima, por enfermedad o defecto mental temporero o permanente, estuviere incapacitada para consentir legalmente.

(d) Si la víctima fuere compelida al acto mediante el empleo de medios engañosos que anulen o disminuyan sustancialmente, sin su conocimiento, su capacidad de resistencia.

(e)Si la víctima es su ascendiente o descendiente en todos los grados o su colateral por consanguinidad hasta el tercer grado tanto de vínculo doble como sencillo e incluyendo la relación de padres, hijos o hermanos por adopción.

La pena de reclusión a imponerse por este delito será de un término fijo de seis (6) años, excepto cuando se trate de las modalidades del delito especificadas en el párrafo siguiente de esta sección. De mediar circunstancias agravantes, la pena fija establecida podrá ser aumentada hasta un máximo de ocho (8) años; de mediar circunstancias atenuantes, podrá ser reducida hasta un mínimo de cuatro (4) años.

Cuando el delito se cometiera en cualquiera de las modalidades descritas en lo [sic] incisos (a) y (e) de esta sección o cuando el delito se cometiere mientras el autor hubiere penetrado al hogar de la víctima o a una casa o edificio residencial donde estuviere la víctima o al patio, terreno o área de estacionamiento de éstos, la pena de reclusión será por un término fijo de ocho (8) años. De mediar circunstancias agravantes, la pena fija establecida podrá ser aumentada hasta un máximo de diez (10) años; de mediar circunstancias atenuantes, podrá ser reducida hasta un mínimo de seis (6) años.

El tribunal podrá imponer la pena de restitución en adición a la pena de reclusión establecida en cualquiera de las modalidades anteriormente señaladas."

33 L.P.R.A. see. 4067 (Supl. 1996).
Al analizar el primer error señalado por la Sa. Díaz Dávila, tenemos que reafirmar que es al juzgador de los hechos a quien le corresponde aquilatar, analizar y ponderar la pmeba que desfila ante sí, para darle el valor probatorio que estime adecuado. Pueblo v. Rodríguez Román, _ D.P.R. _ (1991), 91 J.T.S. 26, pág. 8476. Además, es necesario indicar que en un caso criminal el juzgador de los hechos está en mejor posición para dirimir pmeba conflictiva y su apreciación y análisis de la pmeba debe ser merecedora de gran deferencia por el tribunal apelativo. La sabia norma de deferencia apelativa a la apreciación y análisis que hagan los jueces del Tribunal de Primera Instancia sobre la pmeba que ante ellos desfila requiere que ante una clara ausencia de pasión, prejuicio, parcialidad o error manifiesto, un tribunal apelativo se abstenga de sustituir su criterio por el del juzgador. Pueblo v. Maisonave Rodríguez, _ D.P.R. _ (1991 ), 91 J.T.S. 67, pág. 8838; Pueblo v. Rivera Robles, 121 D.P.R. 858, 869 (1988). Sin embargo, un tribunal apelativo no debe vacilar sobre su autoridad y deber de revocar cualquier fallo condenatorio cuando un examen detenido de toda la pmeba demuestre que el juzgador de los hechos descartó injustificadamente elementos probatorios importantes o fundó su criterio únicamente en testimonios de escaso valor, inherentemente improbables o increíbles. Pueblo v. Luciano Arroyo, 83 D.P.R. 573, 581-582 (1961).
En Pueblo v. Echevarría Rodríguez, _ D.P.R. _ (1991), 91 J.T.S. 43, pág. 8573, el Tribunal Supremo nos dice que:

*1125
"Evidencia exculpatoria" es toda aquella que resulta favorable al acusado y que posee relevancia en cuanto a los aspectos de culpabilidad y castigo irrespectivamente de la buena o mala fe exhibida por el Ministerio Fiscal. La "relevancia" de la evidencia se encuentra condicionada a la impresión derivada por el foro apelativo de que la prueba exculpatoria suprimida, con una razonable probabilidad, habría alterado -ya sea el veredicto o el castigo impuesto- de haber sido presentada al juzgador de los hechos.

Notamos, a base de esta discusión, el carácter restrictivo con que la jurisprudencia federal norteamericana trata esta figura. Esto es, no tan sólo se trata de si el fiscal ha ocultado evidencia exculpatoria; la calidad -y peso de la misma es elemento tan o más importante que su propia existencia si tiene suficiente relevancia como para levantar una razonable probabilidad de que el veredicto o la pena pudieran haber sido distintos si se le hubiese considerado." (Citas omitidas y énfasis suprimido).
II
Procede examinar la prueba desfilada ante el tribunal a quo a la luz de la doctrina expuesta.
En el caso que nos ocupa testificaron por el Ministerio Fiscal el jovencito estudiante de séptimo grado, J.L.A.O., su madre Antonia Ortiz, los estudiantes Ada Liz Ojeda Rivera, Alfred A. Padilla y Bradiel Agosto Díaz, la maestra Sa. Sandra Fontánez y la Sa. Milagros Viera Rivera, Directora de la escuela Mariano Feliú Balseiro. Como prueba de la defensa testificaron la Sa. Lydia Rovira, maestra de escuela, los estudiantes Arelis Nieves, Melissa Matos Nieves, Jackeline Rivera y la bibliotecaria de la escuela, Sa. Gloria Jiménez Rivera.
La Sa. Díaz Dávila se desempeñaba como maestra de español en la escuela Mariano Feliú Balseira de Lomas Verdes en Bayamón. La prueba estableció que la apelante no observaba un comportamiento decoroso en el salón de clases. Estimulaba comportamientos sexuales impropios tales como decirle a los estudiantes que si las muchachas mostraban interés por ellos, debían darle "chinazos por detrás". Decía, además, palabras obscenas tales como "coño", "puñeta" & "hijos de la gran puta".
J.L.A.O., el perjudicado, declaró que en pleno salón de clases la Sa. Díaz Dávila, su maestra de español, le preguntaba si ya le había "retollado el plátano". Que algunas cosas las decía a todo el salón y otras se las decía a él en voz alta. Un día en la biblioteca la maestra intentó tocarle los genitales, mientras él estaba de pie y ella en una mesa, cuando el le pidió permiso para ir al baño. Que la mano de ella trató, pero no pudo y él le preguntó "¿Misi qué pasa?" Que no le llegó a tocar las partes porque se echó hacia atrás. Declaró, además, que un día en el salón, en horas de clases, la maestra le pasó la mano maliciosamente por el muslo cuando estaba parado al lado de su escritorio preguntando de la asignación, que ella se excitaba, hacía ruidos con la boca respirando profundo y él se sentía abochornado. Que si él no la evadía ella trataba de tocar sus partes íntimas. En ocasiones se sentaba en el espaldar de la silla de su pupitre y le tocaba la espalda con sus nalgas. E.E.P. a las págs. 2 y 3.
Estos hechos fueron corroborados total o parcialmente por los siguientes testimonios presentados por el Ministerio Público. (1) Ada Liz Ojeda Rivera declaró que la apelante rara vez daba clase, se pasaba diciendo palabras obscenas y frases como: si lo tenía "parao" y que cuando tuvieran novio permitieran que les dieran chinazos; que si estaban bellacos. La Sa. Díaz Dávila decía que iba a pasar por la piedra a J.L.A.O. y a Bradiel. Que la maestra se sentaba mal porque recostaba su trasero en el espaldar del pupitre de J.L.A.O. y le tocaba la espalda, él se abochornaba y todos se alteraban y empezaban a gritar. (2) Alfred Anthony Padilla declaró que la maestra se quitaba el botón del pantalón y se ponía la camisa por dentro frente a todo el mundo. Indicó que ella se acostaba en el piso. Que cuando ellos hablaban mucho, ella les decía: coño, carajo, cállense. El vio tres veces que la maestra le echaba el brazo a J.L.A.O. por el hombro y le decía algo en secreto, pero no oía lo que decía. J.L.A.O. la evadía. Que la maestra le decía a J.L.A.O. que le gustaba mucho y lo podía llevar a comer o al cine y le decía te amo. Que se lo decía también a él para que se lo dijera a J.L.A.O. (3) La Sa. Sandra Fontánez, maestra de clases especiales de español, declaró que los estudiantes Bradiel y J.L.A.O., a mediados de febrero le dijeron que la maestra de español estaba enamorada de J.L.A.O., y que decía tener una lista de romper cuna, que J.L.A.O. era el primero y el segundo era él. Que la Sa. Díaz Dávila le había dicho a J.L.A.O. algo de ver una selva. (4) Bradiel Agosto Díaz, declaró que la Sa. Díaz Dávila decía coño, carajo, puñeta en la clase. Hablaba de que quería invitarlos a las parchas y la *1126 jungla; y le decía "te voy a enseñar la jungla". Que ella insinuaba que quería hacer algo con él cuando terminara con J.L.A.O.. Se acostaba en el piso. Que a veces la maestra se sentaba en el espaldar de la silla de J.L.A.O. y los muchachos se empezaban a reír. E.E.P., a las págs. 20 y 21.
La defensa utilizó evidencia testifical de reputación, tendiente a negar los hechos en términos generales, pero en ocasiones confirmando el comportamiento de la Sa. Díaz Dávila. Ese fue el caso de la testigo Lydia Rovira, maestra, quien le admitió al Ministerio Público que en su presencia la apelante "hablaba malo en el salón cuando tenía coraje" y que le decía a los estudiantes "pendejos, maricones, que eran unos hijos de la gran puta". E.E.P., a la pág. 16.
Simultáneamente la estudiante testigo de defensa, Melissa Matos Nieves, testificó que el trato de la Sa. Díaz Dávila con J.L.A.O. era distinto, le decía secretitos, lo buscaba y a los demás le hablaba de manera obscena. Indicó que no se atrevía decir todo lo que pasaba en el salón. E.E.P., a la pág. 17.
La estudiante Jackeline Rivera, testigo de la defensa, testificó que no tomaba ciases con J.L.A.O., pero que lo consideraba como su hermanito y que la Sa. Díaz Dávila le dijo que como ella decía que era hermanita de J.L.A.O., ella iba a ser cuñadita de la apelante. E.E.P., a la pág. 18.
El juzgador de los hechos confirió credibilidad a la versión del perjudicado, J.L.A.O., a los demás testigos de cargo y a los de defensa que corroboraron la misma. La Sa. Díaz Dávila no ha demostrado que el tribunal a quo actuó con pasión, prejuicio o parcialidad, Pueblo v. Maisonave Rodríguez, supra, ni nos ha demostrado circunstancias especiales que justifiquen nuestra intervención. La prueba ofrecida por el Ministerio Público es suficiente en derecho y la culpabilidad de la apelante se probó más allá de duda razonable.
Discutiremos conjuntamente los dos errores restantes por estar relacionados entre sí.
La apelante, Sa. Díaz Dávila, se refiere a una hoja de papel contenida en la libreta del estudiante J.L.A.O. en la que aparecían las siglas I.L.Y. ("I Love You"). Alega que el Ministerio Público no presentó la libreta en evidencia por entender que le resultaba adversa y contenía prueba exculpatoria ya que podía contener fantasías sexuales de parte del estudiante hacia su maestra y ello hubiese levantado la razonable probabilidad de que el fallo del tribunal apelado fuera exculpatorio.
Resolvemos que la presentación de dicha hoja de libreta o la libreta completa difícilmente hubiese variado el dictamen apelado. Esta era evidencia circunstancial que, unida al resto de la prueba, tanto directa como circunstancial, no iba a inclinar la balanza a favor de la Sa. Díaz Dávila.
Si la libreta hubiese contenido escritos sexuales fantasiosos del niño hacia su maestra, traería probablemente a la mente del tribunal a quo que quien despertó las fantasías en el muchacho fue la apelante con acercamientos directos e indiscreciones y comentarios abiertos, conducta iniciada por la Sa. Díaz Dávila y no por el joven J.L.A.O. Tal y como señala el Procurador General, en su alegato, la presentación de esa hoja de papel o libreta habría de sucumbir, no importa su contenido, frente a los seis testigos de cargo y otros de defensa que confirmaron circunstancialmente parte de la prueba de cargo. La convicción recaída en este caso respondió a un patrón observado a lo largo de varias semanas, frente a terceros, consistente en muchos dichos y hechos. Aun mirándola con sospecha, la evidencia de la libreta no hubiera arrojado duda razonable en cuanto a su culpabilidad. Por ende dicha evidencia no es realmente exculpatoria, porque no hubiese alterado el dictamen. Pueblo v. Echevarría Rodríguez, supra.
Ill
Por los fundamentos antes expuestos, confirmamos la sentencia apelada.
Así lo acordó y manda el Tribunal y lo certifica la Señora Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General
*1127 ESCOLIOS 97 DTA 70
1. Durante los procedimientos en el Tribunal de Primera Instancia la apelante estuvo representada por el Ledo. Raúl Del Manzano Román, abogado de la práctica privada, desde la vista preliminar hasta el acto de sentencia. El escrito de apelación y la primera Exposición Narrativa fueron presentados por el Ledo. Roberto Farinacci García, Q.E.P.D., también abogado de la práctica privada. Ello trajo como consecuencia el retraso de la disposición del recurso.
2. La sentencia fue impuesta bajo varias condiciones, incluyendo las siguientes condiciones especiales: (1) Que la Sa. Díaz Dávila deberá ser evaluada por un siquiatra reconocido o preferiblemente del Estado; éste deberá someter informe donde recomiende si el tratamiento a seguir sería por un sicólogo o por un siquiatra; y (2) que la Sa. Díaz Dávila deberá hacer gestiones de empleo o estudios.
3. La Sociedad para Asistencia Legal y el Ministerio Público presentaron la exposición estipulada de la prueba (E.E.P.).