Colón Birriel, Juez Ponente
*625 TEXTO COMPLETO DE LA SENTENCIA
I
El apelante Orlando Tirado Ríos fue acusado en el Tribunal de Primera Instancia, Sala Superior de Caguas por infracción al Art. 166 del Código Penal, Apropiación Ilegal Agravada, 33 L.P.R.A. see. 4272, consistente el pliego acusatorio, en que allá en o para el 12 de marzo de 1997, y en Caguas, Puerto Rico, voluntaria, maliciosa y criminalmente se apropió sin violencia ni intimidación, de dos gallos de pelea, valorados en $300.00, pertenecientes a Carlos Aponte Silva. Luego de otros incidentes, se señaló el juicio para el 30 de julio de 1997.
Tras renunciar a su derecho constitucional ajuicio por jurado, fue juzgado por tribunal de derecho y hallado culpable del delito imputado. El 12 de septiembre de 1997, fue sentenciado a seis (6) años de reclusión, sentencia que fue suspendida a tenor con las disposiciones de la Ley Núm. 259 de 3 de abril de 1946, según enmendada, 34 L.P.R.A 1027.
Inconforme con la sentencia, presentó oportunamente Escrito de Apelación ante el Tribunal de Primera Instancia, Sala Superior de Caguas, imputándole a dicho foro tres (3), los que enumeró de la "A" a la "C" No obstante haber señalado tres (3) errores, en su alegato se limitó a discutir solamente el segundo error imputado, es decir, el señalado con la letra "B". En esencia, en el error discutido, le imputa error al foro de instancia al encontrarlo culpable del delito imputado, cuando de la prueba presentada por el Ministerio Público no se estableció más allá de duda razonable que el valor del bien apropiado excediese de doscientos dólares ($200.00).
II
Toda vez que los errores señalados con las letras "A" y "C", no fueron argumentados por el apelante en su alegato, los entendemos renunciados, por lo cual no entraremos en sus consideraciones. Pueblo v. Rivera Rodríguez, 123 D. P.R. 467, 469 (1989).
Por ende, la controversia ante nuestra consideración estriba en determinar si la prueba presentada por el Ministerio Público estableció el valor del bien apropiado más allá de duda razonable. Consideremos, pues, el error argumentado a la luz de los hechos expuestos en la exposición narrativa de la prueba, los escritos de las partes y los principios legales para determinar si se probó por el Ministerio Público fuera de duda razonable el valor del bien apropiado y así la modalidad del delito imputado. Veamos.
El apelante fue hallado culpable del delito de apropiación ilegal agravada, por haberse apropiado de bienes muebles cuyo valor excedía los doscientos dólares ($200.00). Constituye la conducta prohibida una modalidad del delito de apropiación ilegal tipificado en el Art. 165 del Código Penal, 33 L.P.R.A. see. 4271, el que dispone como sigue:

"§ 4271. Apropiación ilegal

Toda persona que ilegalmente se apropiare sin violencia ni intimidación de bienes muebles, pertenecientes a otra persona, será sancionada con pena de reclusión por un término que no excederá de seis (6) meses, multa que no excederá de quinientos (500) dólares, pena de restitución, o cualquier combinación de éstas, a discreción del tribunal."
Por otro lado, el Código Penal tipifica en su Art. 166, 33 L.P.R.A. sec. 4272 el delito de apropiación ilegal en su modalidad agravada. En éste artículo se define dicho delito como sigue:

*626
"§ 4272. Apropiación ilegal agravada

Será sancionada con pena de reclusión por un término fijo de seis (6) años, toda persona que cometiere el delito previsto en la see. 4271 de este título con la concurrencia de cualquiera de las siguientes circunstancias:

(a)..]

(b) Apropiándose de bienes cuyo valor fuere de doscientos dólares o más.

Por su parte, la Sección 11 del Art. II de nuestra Constitución, garantiza el derecho de todo acusado "a gozar de la presunción de inocencia". Esto implica que el Ministerio Fiscal viene obligado a probar la culpabilidad del acusado más allá de duda razonable. Pueblo v. Ortiz Morales, 86 D.P.R. 456 (1962); Pueblo v. Ramos y Alvarez, 122 D.P R. 287, 315-316 (1988); Pueblo v. Bigio Pastrana, 116 D.P.R. 748, 760-761 (1985). Tienen que establecerse todos los elementos del delito imputado. Pueblo v. Ramos y Alvarez, supra; Pueblo v. Bigio Pastrana, supra.
Es un principio fundamental de nuestro sistema de derecho y elemento del debido proceso de ley, que se establezca la culpabilidad de un acusado más allá de duda razonable. Pueblo v. Cruz Granados, 116 D.P.R. 3 (1984). Es obligación del Ministerio Público probar la culpabilidad del acusado mediante evidencia que establezca todos los elementos del delito más allá de duda razonable, Pueblo v. Pagán Santiago, _ D.P.R. _ (1992), 92 J.T.S. 56, Opinión de 20 de mayo de 1992. Para cumplir con este requisito se requiere que la prueba presentada por el Ministerio Público sea "suficiente en derecho", lo que significa que la evidencia presentada tiene que producir certeza o convicción moral en una conciencia exenta de preocupación o en un ánimo no prevenido. Pueblo v. Rodríguez Román, 128 D.P.R. _ (1991), 91 J.T.S. 26 a la pág. 8476; Pueblo v. Narváez Narváez, 122 D.P.R. 80, 86 (1988); Pueblo v. Carrasquillo, 102 D.P.R. 545, 552 (1974). La insatisfacción con la prueba es lo que se conoce como la duda razonable. Pueblo v. Somarriba García, _ D.P.R. _ (1992), 92 J.T.S. 109, a la pág. 9869; Pueblo v. Cabán Torres, 117 D.P.R. 645, 652 (1986). A esos efectos nuestro Tribunal Supremo ha establecido como principio de derecho que:
El Ministerio Fiscal no cumple con ese requisito presentando prueba que meramente sea "suficiente", esto es, que verse sobre todos los elementos del delito imputado; se requiere que la misma sea "suficiente en derecho". "Ello significa que la evidencia presentada además de suficiente, tiene que ser satisfactoria, es decir que produzca certeza o convicción moral en una conciencia exenta de preocupación o en un ánimo no prevenido... Pueblo v. Carrasquillo, supra. Esa insatisfacción con la prueba es lo que se conoce como duda razonable y fundada. Pueblo v. Toro Rosas, 89 D.P.R. 169 (1963)" supra; Pueblo v. Cabán Torres, 117 D.P.R. 645, a la pág. 652, Pueblo v. León Martínez, 93 J.T.S. 22, (1993).
El significado jurídico del precepto duda razonable se ha definido de la siguiente manera:
"...no quiere decir que toda duda posible tenga que ser destruida y que la culpabilidad del acusado tenga que establecerse con certeza matemática, sino que la evidencia establezca aquella certeza moral, que convence, dirige la inteligencia y satisface la razón. Duda razonable es una fundada, producto del raciocinio de todos los elementos de juicio envueltos en el caso". Pueblo v. Bigio Pastrana, 116 D.P.R. 748, 761 (1985). Véase además, Pueblo v. Meléndez Rodríguez, 94 J.T.S. 103, Pueblo v. Cruz Granados, supra.
La norma en esta jurisdicción es que, en ausencia de pasión, prejuicio, parcialidad o error manifiesto, un foro apelativo no ha de intervenir con la apreciación y adjudicación de credibilidad que con relación a la prueba de los hechos hubiese realizado el juzgador a nivel de instancia. Pueblo v. Melia León, _ D.P.R. _, 97 J.T.S. 110 a la pág. 1356; Pueblo v. Rivera, _ D.P.R. _, 94 J.T.S. 150, a la pág. 510; Pueblo v. Pagán Santiago, _D .P.R. _, (1992), 92 J.T.S. 56, a la pág. 9481; Pueblo v. Pellot Pérez, 121 D.P.R. 791, 806 (1988); Pueblo v. Pagán Díaz, 111 D.P.R. 608 (1981); Pueblo v. Cruz Negrón, 104 D.P.R. 881, 882, (1976). Corresponde, pues, al jurado o, en su defecto, al juez que presidió el proceso, dirimir los conflictos de prueba.
*627 Por otro lado, la apreciación que hace un juzgador de la evidencia desfilada durante un proceso judicial criminal es una cuestión mixta de hecho y de derecho. Es así por cuanto el análisis que de la prueba presentada se realiza "pone en movimiento, además de la experiencia del juzgador, su conocimiento del derecho para así llegar a una solución justa de la controversia. Pueblo v. Carrasquillo, supra; Pueblo v. Cabán Torres, supra. La credibilidad consiste en una asignación valorativa de certeza o probabilidad sobre una versión de los hechos o acometimientos incidentales al caso. En los casos ventilados ante jurado, es éste el que viene llamado "a ejercer este juicio valorativo sobre la totalidad de la prueba y para el mismo sólo se requiere valerse del sentido común, la lógica y la experiencia para deducir cuál de las versiones, si alguna prevalece sobre las otras. Los criterios que guían la evaluación de la prueba en un juicio son idénticos a aquellos que utilizamos en la vida cotidiana, tales como el comportamiento y el carácter de quienes dan su versión de los hechos, la parcialidad que puedan afectarles, la naturaleza de la declaración y otros. Por tanto, el juicio sobre la credibilidad de la prueba prescinde de conocimientos previos o especializados en derecho". Pueblo v. Colón Burgos, _ D.P.R. _ (1996), 96 J.T.S. 52, a la pág. 970. En los casos ventilados por tribunal de derecho, como en el presente caso, el juez de instancia es el que está llamado a ejercer el juicio valorativo sobre la totalidad de la prueba.
Es por ello que la determinación de si se ha satisfecho el quántum de prueba que exige la Constitución es una mixta de hecho y de derecho. De ahí que sea revisable en apelación por este Tribunal como una cuestión de derecho. Pueblo v. Echevarría Rodríguez, _ D.P.R. _, (1991), 91 J.T.S. 43, a la pág. 8567; Pueblo v. Bonilla Romero, 120 D.P.R. 92, 111 (1987); Pueblo v. Pagán Díaz, 111 D.P.R. 608 (1981); Pueblo v. Cabán Torres, 117 D.P.R. a la pág. 648.
Es norma reiterada en nuestra jurisdicción que un tribunal apelativo no intervendrá con la apreciación de la prueba realizada por el Tribunal de Instancia en ausencia de prejuicio, parcialidad o error manifiesto. Pueblo v. Ayala Cancel, 96 D.T.A. 80, pág. 197, (1996). No obstante, una apreciación errónea de la prueba no tiene credenciales de inmunidad frente a la función revisora de este Tribunal. Pueblo v. Rosa Ramírez, _ D.P.R. _ (1994), 94 J.T.S. 87 a la pág. 12,301; Vda. de Morales v. De Jesús Toro, 107 D.P.R. 826, 829 (1978).
A la luz de los anteriores principios es que hemos examinado el récord, la exposición narrativa de la prueba (E.N.P.) y de los escritos de las partes. Veamos.
A la luz de lo expuesto, veamos si el Ministerio Público cumplió con su obligación de establecer el valor del bien objeto de apropiación, uno de los elementos del delito más allá de duda razonable.
Surge de la exposición narrativa de la prueba aprobada por el foro de instancia, luego de las enmiendas que sometiera el Ministerio Público, que ante dicho foro se presentó evidencia testifical más allá de duda razonable, del acto de la apropiación ilegal del bien mueble objeto de la acusación perteneciente al perjudicado Carlos Aponte Silva, así como del valor en el mercado de dicho bien, aportada por dicho perjudicado y por el testimonio pericial del Ledo. Severo Torruella Vilar.
En el caso ante nuestra consideración, se le imputó al apelante el delito de apropiación ilegal agravada, por lo cual, en cuanto al elemento del valor del bien apropiado, al igual que los otros elementos del delito, le correspondía al Ministerio Público probar el valor del bien apropiado. Ello por razón de que el delito de apropiación ilegal está dividido en grados, y su clasificación en cuanto a grave y menos grave varía de acuerdo al valor del bien apropiado. Pueblo v. Delgado, 50 D.P.R. 658, 660 (1936). Para probar el delito imputado en cuanto al elemento del valor del bien apropiado, se requiere evidencia de que su valor es de doscientos dólares ($200) o más. A esos fines, lo determinante es el valor en el mercado, no el costo original, en la época y lugar en que se cometió el delito. Pueblo v. Rivera, 75 D.P.R. 298 (1953). Aunque no es concluyente, el costo original y la evidencia sobre el valor, es admisible en evidencia a los fines de ayudar al juzgador a fijar el valor del bien al momento de cometerse el delito.
Por otro lado, para probar el valor en el mercado del bien apropiado no se requiere el testimonio de un perito, habiéndose estimado suficiente el testimonio no controvertido de un testigo. Pueblo v. Laureano Figueroa, 97 D.P.R. 354 (1969); Pueblo v. Gagot Mangual, 96 D.P.R. 625 (1968); Pueblo *628 v. Bonilla Figueroa, 83 D.P.R. 295, 299 (1961); Pueblo v. Rivera, supra.
Según se desprende de la E.N.P., declararon varios testigos por el estado, entre ellos, el dueño de los pollos objetos de la apropiación, Carlos Aponte Silva. A raíz de su testimonio relacionado a sus vastos conocimientos de pollos y gallos de pelea fue calificado como perito, con objeción de la representación legal del apelante. Declaró, en lo pertinente, que los pollos apropiados eran suyos, los que eran de excelente calidad. Los abuelos de esos pollos los vendieron en Santo Domingo por $5,000.00. Obtuvo la información de Freddy Quiñones a quien le compró diez pollos en $200.00 cada uno. Más adelante, expresó que al padre de los pollos apropiados lo llamaban "Philadelphia", que lleva con él entre ocho y diez años; igual tiempo con él lleva la madre de los pollos que era hija de "Philadelphia". El propósito de casarlos así es conservar los mejores pollos, si se muere el padre, o madre, que no se quede sin la raza. Sobre el valor de los pollos expresó que eran de $150.00 cada uno. Identificó los pollos apropiados cuando Reynaldo, otro testigo, se los mostró físicamente, en adición a las fotografías que se marcaron como Exhibit I y II del Pueblo. Reiteró en el redirecto a que fue sometido que no vendería esos pollos en menos de $150.00 cada uno.
El licenciado Severo Torradla Yilar, otro testigo del Ministerio Público, fue presentado como perito para establecer la forma y manera de determinar el valor de los pollos y de los gallos. Es abogado retirado, estudioso del deporte de los gallos desde hace cincuenta (50) años. Ha estado en contacto con este deporte desde que tenía diez (10) años. Ha sido castador, ha criado, los ha jugado, ha sido juez de valla en peleas de gallos, juez de inscripción, con licencia. Escribe columna semanal sobre el deporte de gallos, titulada "Con el Pico y las Espuelas" en el periódico La Semana. Escribió también en El Imparcial, El Reportero, El Vocero, en la Revista Cantaclaro de México, y en la Revista Pico y Espuela de Santo Domingo. Tiene un programa de gallos en el Canal 13 de televisión. Fue Director del área del deporte de los gallos en el Departamento de Recreación. Tiene la biblioteca más completa sobre este deporte y el primer museo de gallos. Ha representado a Puerto Rico en este deporte en torneos en Panamá, Santo Domingo, Venezuela, Colombia y Perú. Administró los Coliseos de Cayey, Caimito, Caguas y los Clubes Gallísticos de San Juan e Isla Verde. Fue Presidente de la Comisión de Gallos. Resolvía querellas. Tiene sometida legislación propuesta para el deporte de gallos a petición de los deportistas. Bajo su incumbencia en Recreación se enmendó el Reglamento sobre Lidia de Gallos. Conoce que la primera ley de gallos, fue la número 98 del 12 de agosto de 1933, de la autoría de Don Rafael Martínez Nadal. Anteriormente ha sido aceptado como perito en esta materia en un caso civil del Tribunal de Bayamón. Es el caso del Ingeniero José Rivera, donde estableció el valor de los gallos en cuestión en ese caso. Luego de su testimonio fue calificado como perito.
En cuanto a lo pertinente de su testimonio, declaró que castar significa adquirir un gallo y una gallina de línea de sangre probada para obtener las características deseadas, la valentía. La relevancia que tiene esto con el valor del gallo, es que el valor se determina desde que la gallina pone el huevo hasta que el gallo pelea. Hay que vacunarlo, comprarle medicinas, y eso cuesta a cualquier deportista no menos de $400.00. Los animales no se pueden valorar igual, y menos establecer su valor por el de la carne. El pollo se llama al que no ha peleado, y gallo al que ya ha peleado.
El testigo declaró que conoce al perjudicado, Carlos Aponte Silva, como comerciante y deportista de gallos. Conoce la crianza de pollos y gallos del señor Aponte. Siempre lo ha conocido por tener lo mejor, siempre ha comprado lo mejor. En el deporte de gallos se le considera al señor Aponte Silva un ganador. Ha visto sus gallos desde la casta y peleando. Le ha jugado a los gallos de Aponte Silva porque son muy buenos. Lo conoce hace como veinte años.
En la valoración de gallos, hay que tener en cuenta el tiempo invertido. El asunto es complejo. El vio los pollos que se le desaparecieron a Aponte Silva. Los vio la tercera semana del mes de marzo. Eran rubios, colinegros, uno con patas blancas y espuelas negras y el otro con patas amarillas, espuelas negras. La configuración física de esos pollos era como de ocho o nueve meses. El testigo conoce que esos pollos proceden del gallo campeón llamado Philadelphia y que son nietos del gallo "10,000" que se vendió en Santo Domingo. El valor del gallo depende del "pedigree". No se pueden valorar todos iguales. Si la gallina tiene la misma sangre del gallo, los pollos son magníficos. Si no son afines, salen mal. Conoce que los pollos del gallo Philadelphia salieron bien.
*629 Explicó que el Juez de Valla es aquel que es árbitro en las peleas, y exige que se dé cumplimiento al Reglamento. Tiene que tener amplio conocimiento del Reglamento. No es fácil el trabajo, por la presión de la gente, ya que hay muchos "jueces de valla" en las gradas. Para aceptar un gallo a pelear hay que quitarle la cresta y barba, recortarlo como dice el Reglamento, con su cinta distintiva, y que esté completamente limpio.
El testigo declaró que los pollos en cuestión en este caso, de acuerdo con su experiencia, el linaje de los mismos; el cual conoce, su pedigree, el cual también conoce, y en el trabajo que ha dado conseguir esa línea de sangre, no valen menos de doscientos ($200.00) cada uno. Por su pedigree, tienen un valor excepcional.
El error señalado no fue cometido. A base de lo expuesto, no tenemos ninguna otra alternativa que confirmar la sentencia apelada, por haberse establecido más allá de duda razonable el valor del bien apropiado ilegalmente.
Lo pronunció el Tribunal y lo certifica la señora Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General