El Juez Asociado Señor Kolthoff Caraballo
emitió la opinión del Tribunal.
La premisa es sencilla, pero de inconmensurable valor: en un régimen de leyes nadie tiene derecho a un trato preferente y ventajoso basado en el dinero, la ventaja o la mejor relación personal. Nuestra administración pública está cimentada en el fiel desempeño del ejercicio por los funcionarios públicos, sin que para ello medie paga adicional alguna o consideraciones extrañas a los méritos del asunto en cuestión.(1)
El presente caso nos brinda la oportunidad de expresarnos con relación a la figura del “delito menor incluido” y, *213 específicamente, si el “delito de influencia indebida”(2) está considerado como un delito menor incluido en el delito de soborno agravado(3). Contestamos esta interrogante en la negativa. Sin embargo, con relación a los demás errores señalados por el peticionario, determinamos que no se cometieron, por lo que se confirma la Sentencia impuesta al del peticionario en cuanto al Art. 3.2(c) de la Ley de Ética Gubernamental, infra. A continuación, los hechos adjudicados por el Tribunal de Primera Instancia.
I
El 16 de febrero de 2010, la Oficina del Fiscal Especial Independiente (FEI) presentó diez pliegos acusatorios por hechos ocurridos durante los últimos meses del 2004 y principios del 2005 en contra del Sr. Wilson Soto Molina (peticionario). En los mismos, se imputaron nueve infracciones al Art. 210 del Código Penal de 1974(4) —soborno agravado— por haber solicitado y obtenido dinero cuando era alcalde del municipio de Cataño (Municipio). El décimo pliego acusatorio contenía una violación al Art. 3.2(c) de la Ley Núm. 12 de 24 de julio de 1985, conocida como la Ley de Ética Gubernamental,(5) por haber solicitado y obtenido dos gallos de pelea valorados en quinientos dólares. Una corporación que tenía contratos con el Municipio le entregó lo gallos en la alcaldía. El juicio se celebró en el Tribunal de Primera Instancia (TPI), Sala de Bayamón, por tribunal de derecho.
Durante el juicio, se admitió prueba documental de ambas partes y prueba testifical del FEI. Esta última prueba *214 consistió en los testimonios del Sr. Rafael Vázquez Marcano, quien para la fecha de los hechos se desempeñaba como director de Obras Públicas del Municipio; el Sr. Luis Pagán Navedo, quien para la fecha de los hechos se desempeñaba como director de Finanzas del Municipio; el Sr. Orlando Rivera Alcázar, ingeniero y dueño de la firma ORAM Engineering (ORAM); la Sra. Mayra Ramsamy Nieves, ayudante del peticionario; el Sr. Marcos García Irizarry, y la Sra. Elsie Grille Álvarez. Finalmente, se estipuló el testimonio que prestó en la vista preliminar el Sr. Ramón Grille Álvarez, quien era ejecutivo y codueño de ORAM.
Según surgió del relato de los testigos, debido al desastre ocurrido por el paso de la tormenta tropical Jeanne, el peticionario y los jefes de dependencias se reunieron para establecer los planes de acción a seguir. En la reunión se acordó solicitar a ORAM una cotización por la labor del recogido y disposición de los escombros.(6) El 16 de septiembre de 2004, ORAM presentó su propuesta y fue aceptada.
Ahora bien, el 24 de septiembre de 2004, el Sr. Juan Salgado Agueda(7) —ayudante especial del peticionario— citó a los señores Rivera Alcázar y Grille Álvarez —ejecutivos de ORAM— a una reunión-almuerzo. Allí, el señor Salgado Agueda les informó que la campaña de reelección del peticionario estaba comenzando y necesitaban una aportación económica de $200,000 en efectivo. Como los ejecutivos de ORAM se opusieron a esa petición, el señor Salgado Agueda les indicó que si no contribuían con esa cantidad tendrían dificultad en cobrar los contratos que tenían con el municipio. Ante esa situación, ORAM accedió a lo solicitado con la condición de que pagaría según cobrara dichos contratos. Así las cosas, según ORAM fue recibiendo el pago *215 de las facturas comenzó a satisfacer la suma solicitada. Los señores Rivera Alcázar y Grille Álvarez declararon que, en varias ocasiones, cuando le entregaron el dinero al señor Salgado Agueda, este salía de la oficina y luego regresaba sin el dinero, y les manifestaba que el alcalde les agradecía su cooperación.
Además, el señor Pagán Navedo, director de Finanzas del municipio, testificó que el peticionario le insistió en varias ocasiones que le pagara las facturas a ORAM y a otros contratistas porque iban a dar dinero para su campaña política. Expresó que el 4 de octubre de 2004, el peticionario reunió a varios funcionarios municipales. En la reunión le inquirió al señor Pagán Navedo por qué no había sacado el pago de ORAM. Este le contestó que no había visto los contratos ni las facturas y que no había suficiente dinero en la caja para hacer el pago. Según el señor Pagán Navedo, el peticionario le indicó que tenía que sacar el pago porque ORAM iba a dar dinero para la campaña y le ordenó que cambiara unos certificados de depósitos que tenía el municipio. Luego de esta reunión, en varias ocasiones, tanto el peticionario como el señor Salgado Agueda, le pidieron e insistieron al señor Pagán Navedo que sometiera los pagos a ORAM. Ante la irregularidad de las presiones para pagar a los contratistas, el señor Pagán Navedo solicitó reunirse con el peticionario. Mientras manifestaba sus inquietudes, el peticionario lo interrumpió y le indicó que tenía que entender que esas personas fueron las que pagaron su campaña.
Por otro lado, mientras el peticionario inspeccionaba las obras realizadas por ORAM, le expresó al señor Grille Álvarez que era gallero y le preguntó si conocía de alguien que vendiera gallos de pelea, ya que quería entrenarlos para pelear el próximo año. El señor Grille Álvarez se comunicó con su hermana, la señora Grille Álvarez, para que le consiguiera los gallos. Esta le pidió a su novio, el señor García Irizarry y quien era criador de gallos de pelea, que los consiguiera. Así las cosas, la señora Grille Álvarez le *216 entregó a su hermano dos gallos de pelea valorados entre doscientos y quinientos dólares. Los señores Grille Alvarez y Rivera Alcázar acudieron a la oficina del peticionario y le entregaron personalmente los dos gallos.
Luego de evaluar toda la prueba, el TPI encontró culpable al Sr. Wilson Soto por nueve infracciones al Art. 213 del Código Penal de 1974 (33 LPRAsec. 4364 (ed. 1974)) —por el delito de influencia indebida— y por una violación al Art. 3.2(c) de la Ley de Ética Gubernamental, supra. Es importante destacar que el peticionario nunca fue acusado por el delito de influencia indebida. El 8 de agosto de 2011, el FEI presentó una moción para que se impusieran agravantes a la sentencia, al amparo de la Regla 171 de Procedimiento Criminal, 34 LPRA Ap. II. Por su parte, el peticionario se opuso a la solicitud. Según lo anterior, el foro de instancia analizó los argumentos de ambas partes y si procedía imponer una pena de multa o de reclusión. El informe presentencia no recomendó nada al respecto; solo indicó que no se recomendaba al señor Soto Molina para los beneficios de una sentencia suspendida. El 16 de septiembre de 2011 dictó sentencia en la que condenó al peticionario a cumplir tres años de cárcel, concurrentemente entre sí, por cada infracción al Art. 213, y un año de reclusión por violar el Art. 3.2(c), que cumpliría consecutivamente con la anterior.
Inconforme con esa determinación, el 16 de septiembre de 2011, el peticionario acudió al Tribunal de Apelaciones (TA) mediante apelación. En síntesis, alegó que el Tribunal de Primera Instancia erró al resolver que: (1) el delito de influencia indebida es un delito menor incluido en los delitos de soborno y soborno agravado; (2) la evidencia desfilada sostenía las nueve infracciones al Art. 213, supra, y a la violación del Art. 3.2(c), supra; (3) era culpable sin demostrar que su culpabilidad se estableció más allá de duda razonable; (4) le impondría una pena de cárcel y no una *217 pena de multa; (5) le impondría las penas de forma consecutiva y no concurrente, y (6) dictaría una pena fija en vez de una pena con atenuantes. El 13 de julio de 2012, el foro intermedio emitió una sentencia en la que confirmó la sentencia dictada por el TPI.
En desacuerdo con la decisión del Tribunal de Apelaciones, el peticionario presentó un recurso de certiorari ante esta Curia, en el que señaló los errores siguientes:
Cometieron error el T.P.I. y el T.A. al resolver que el Art. 213 del Código Penal de 1974 —influencia indebida— es un delito menor incluido en los delitos de soborno y soborno agravado que tipificaban los Arts. 209 y 210 del Código Penal de 1974.

Cometieron error el T.P.I. y el T.A. al resolver que la evidencia desfilada por el Ministerio Público sostenía nueve convicciones por infracción al Art. 213 del Código Penal de 1974.

Cometieron error el T.P.I. y el T.A. al resolver que la evidencia desfilada por el Ministerio Público sostenía una convicción por infracción al Art. 3.2(c) de la Ley de Ética Gubernamental.

Cometieron error el T.P.I. y el T.A. al declarar convicto al peticionario por las infracciones al Art. 213 del Código Penal de 1974, y el Art. 3.2(c) de la Ley de Ética Gubernamental sin que dicha culpabilidad fuera establecida más allá de duda razonable como lo requiere el Art. II, sec. 11 de la Constitución del Estado Libre Asociado de Puerto Rico.

Abusó de su discreción el T.P.I. al dictar sentencia de cárcel en contra del peticionario y no una de pena de multa, ya que el informe \presentencia] justificaba esta última y no la que se impuso. El T.A. repitió este error.

Abusó de su discreción el T.P.I. al imponer penas de forma consecutiva y no concurrente entre sí. El T.A. repitió este error.

Cometió error el T.P.I. al dictar sentencia en contra del peticionario y determinar que la pena adecuada era la pena fija, y no una con atenuantes. El T.A. repitió este error.

Cometió error el T.P.I. al dictar las sentencias contra el peticionario sin conceder los beneficios del Art. 79 del Código Penal de 2004, 33 L.P.R.A. see. 4707. El T.A. repitió este error. (Énfasis en el original).
Expedido el recurso y con el beneficio de las comparecencias de ambas partes, resolvemos.
*218 II
El peticionario nos señala que tanto el TPI como el TA cometieron un error al resolver que el Art. 213 del Código Penal de 1974 —influencia indebida— es un delito menor incluido en los delitos de soborno y soborno agravado que tipificaban los Arts. 209 y 210 del Código Penal de 1974 (33 LPRA sees. 4360 y 4361). Además, nos plantea que, a su vez, erraron los tribunales a quo al resolver que la evidencia presentada por el Ministerio Público sostenía nueve veredictos por infringir el Art. 213, supra. Así, pues, procedemos a discutir el derecho aplicable.
La Constitución del Estado Libre Asociado de Puerto Rico, en su Art. II, Sec. 11, expresa que
[e]n todos los procesos criminales, el acusado disfrutará del derecho a un juicio rápido y público, a ser notificado de la naturaleza y causa de la acusación recibiendo copia de la misma, a carearse con los testigos de cargo, a obtener la comparecencia compulsoria de testigos a su favor, a tener asistencia de abogado, y a gozar de la presunción de inocencia. (Enfasis nuestro)(8)
Por otra parte, es norma constitucional reiterada que para que el Estado pueda procesar criminalmente a un ciudadano, el debido proceso de ley exige que el acusado conozca la naturaleza y extensión de los delitos que se le imputan. Para ello, el pliego acusatorio debe incluir una exposición de todos los hechos que constituyen el delito específico.(9) Este precepto constitucional lo recoge estatutariamente la Regla 38(d) de Procedimiento Criminal, la cual establece lo siguiente:
Si la incongruencia o desacuerdo es de tal naturaleza que la prueba estableciere un delito distinto del imputado, no in *219 cluido en este, o estableciere la comisión de un delito fuera de la competencia del tribunal, se deberá disolver el jurado y se sobreseerá el proceso. 34 LPRAAp. II.
Como surge de la referida regla, no se permite encontrar culpable a un acusado por un delito distinto al imputado en la acusación. Sin embargo, a modo de excepción, se permite encontrar culpable por un delito distinto siempre y cuando ese delito sea menor y esté incluido en el delito mayor imputado. A estos efectos, en el pasado hemos explicado que para que un delito se considere como un delito menor incluido, este
“[...] debe estar comprendido en el mayor por el cual se le acusa y que los hechos expuestos para describir la comisión del delito mayor deben contener las alegaciones que son esenciales para constituir una imputación por el menor. Si el delito mayor incluye todos los elementos de hecho y los requeridos por la Ley en relación con el menor, el mayor incluye al menor; pero si el delito menor requiere algún otro elemento indispensable que no es parte del delito mayor entonces el menor no está comprendido en el mayor. La prueba para determinar si un delito está incluido en otro es determinar si no se puede cometer el primer delito sin que necesariamente se cometa el segundo”. (Enfasis nuestro).(10)
Asimismo, hemos establecido que para poder considerar que un delito menor está incluido en el mayor, “to-dos los ingredientes legales del corpus delicti del delito me-nor deben estar en el mayor; el delito menor debe ser parte de hecho, del mayor, además de estar enmarcado dentro de la definición legal del mayor como parte del mismo”. (Enfasis nuestro).(11)
En cuanto a los delitos en controversia en nuestro caso, el delito de soborno castiga el hecho de que un servidor público cobre por su parte por un servicio que de *220 ordinario es gratuito, aprovechándose de la autoridad del cargo que ocupa.(12) Por otro lado, el delito de influencia indebida penaliza tratar o lograr obtener un beneficio —de cualquier tipo— por pretender ejercer una influencia —ya sea real o imaginaria— en el desempeño del ejercicio de un funcionario o empleado público como tal. En particular, el delito de soborno queda tipificado en el Art. 209, supra, como sigue:
Todo funcionario o empleado público, o jurado, o árbitro, o cualquier persona autorizada en ley para oír o resolver alguna cuestión o controversia, que solicite o reciba, directamente o por persona intermedia, para sí o para un tercero, dinero o cualquier beneficio, o aceptare una proposición en tal sentido, por realizar un acto regular de su cargo o función, será sancionado con pena de reclusión por un término fijo de nueve (9) años. De mediar circunstancias agravantes, la pena fija establecida podrá ser aumentada hasta un máximo, de quince (15) años; de mediar circunstancias atenuantes, podrá ser reducida hasta un mínimo de seis (6) años. (Enfasis nuestro).(13)
A estos efectos, el propio Código Penal de 1974 define en su Art. 7(16) el concepto “funcionario público” o “empleado público” como
[t]oda persona que ejerza un cargo o desempeñe una función retribuida o gratuita, permanente o temporal, en virtud de cualquier tipo de nombramiento, contrato o designación, para la Rama Legislativa, Ejecutiva o Judicial del Estado Libre Asociado de Puerto Rico o cualesquiera de sus municipios, agencias, corporaciones públicas, juntas, subdivisiones políticas y demás dependencias públicas.(14)
Por otra parte, “beneficio” se define como cualquier provecho, utilidad, ventaja, o ganancia, y no está limitado a una ganancia pecuniaria o material, sino que denota cualquier forma de ventaja.(15)
*221 En esencia, el delito de soborno consiste en solicitar o recibir, directamente o por medio de un intermediario, dinero o cualquier beneficio, ya sea para beneficio propio o para un tercero, por realizar algún acto regular del cargo o función.(16) En el pasado hemos explicado que para que se constituya el delito de soborno, es esencial que el funcionario tenga “la competencia dentro de su cargo para hacer lo que se ha acordado a cambio del beneficio que se le ofrece”.(17)
Este delito se configura tan pronto el funcionario público acepta la proposición objeto del soborno, o cuando solicita el beneficio por sí o por medio de una tercera persona a cambio de llevar a cabo un acto regular de su cargo o función oficial. No es necesario que el acto delictivo objeto del soborno se lleve a cabo.(18)
Se comete soborno en su modalidad agravada cuando, según tipificado en el Art. 210, supra,
[el] funcionario o empleado público o jurado o árbitro, o la persona autorizada en ley para oír o resolver una cuestión o controversia, solicitare, o recibiere el dinero, o el beneficio, o aceptare la promesa, por omitir o retardar un acto regular de sus funciones o por ejecutar un acto contrario al cumplimiento regular de sus deberes, o con el entendido o en la inteligencia de que tal remuneración o beneficio habrá de influir en cualquier acto, decisión, voto o dictamen de dicha persona en su carácter oficial, la pena de reclusión será por término fijo de doce (12) años. De mediar circunstancias agravantes, la pena fija establecida podrá ser aumentada hasta un máximo de veinte (20) años; de mediar circunstancias atenuantes^ podrá ser reducida hasta un mínimo de ocho (8) años. (Enfasis nuestro).(19)
Por otra parte, el delito de influencia indebida queda tipificado en el Art. 213, supra, como sigue:
*222 Toda persona que obtuviere o tratare de obtener de otra cualquier beneficio asegurando o pretendiendo que se halla en aptitud de influir en cualquier forma en la conducta de un funcionario o empleado público en lo que respecta al ejercicio de sus funciones, será sancionada con pena de reclusión por un término fijo de tres (3) años, o multa no menor de quinientos un (501) dólares ni mayor de cinco mil (5,000) dólares, o ambas penas a discreción del tribunal. De mediar circunstancias agravantes, la pena fija establecida podrá ser aumentada hasta un máximo de cinco (5) años, o multa no menor de quinientos un (501) dólares ni mayor de diez mil (10,000) dólares, o ambas penas a discreción del tribunal; de mediar circunstancias atenuantes, podrá ser reducida hasta un mínimo de un (1) año, o multa no menor de quinientos un (501) dólares ni mayor de tres mil (3,000) dólares, o ambas penas a discreción del tribunal. (Énfasis nuestro).(20)
Como surge claramente del texto, esta prohibición no se limita a funcionarios o empleados públicos, sino que se ex-tiende a toda persona que asegure o pretenda que se halla en aptitud de influenciar a un funcionario o empleado público. Tampoco se requiere que el autor del delito obtenga un beneficio en su propio patrimonio, sino que es suficiente que obtenga o intente obtener un beneficio en favor de un tercero.(21)
III
Examinemos, pues, la aplicación de los fundamentos antes expuestos al caso de autos. Para atender el asunto, limitaremos la controversia a si una sentencia por el delito de influencia indebida se puede sostener de acuerdo con la doctrina del delito menor incluido, toda vez que el convicto fue acusado por el delito de soborno agravado. En este contexto es importante recalcar como asunto de umbral que, sometida toda la prueba, el Ministerio Público no logró convencer a la Honorable Juez del Tribunal de Primera *223 Instancia de que existían los elementos necesarios para una sentencia por las nueve infracciones de soborno agravado imputadas en el pliego acusatorio. De hecho, la distinguida sala de instancia, y conforme a la misma prueba, ni siquiera encontró los elementos necesarios para determinar una sentencia por el mismo delito en su modalidad simple (Art. 209). Es decir, hubo una absolución implícita en cuanto a esos delitos.(22) Luego de analizada la controversia, determinamos que las sentencias por el delito de influencia indebida tampoco se sostienen según un pliego acusatorio que imputaba el delito de soborno agravado.
El debido proceso de ley exige que el acusado sea notificado del delito en su contra para que pueda preparar una defensa adecuada ante la acusación del Estado. Lo anterior solo se logra cuando notifican al acusado de todos los elementos de la conducta que motiva el proceso penal en su contra. Lo contrario es sencillamente impermisible de acuerdo con nuestro ordenamiento penal. Es por esto que para sostener una sentencia por el delito de influencia indebida como un delito menor incluido, sus elementos deben estar totalmente contenidos en el delito mayor, en nuestro caso, el de soborno agravado. Por consiguiente, para sostener esta sentencia, estaríamos forzados a concluir que siempre que se comete el delito de soborno agravado, a su vez se comete el de influencia indebida. De antemano adelantamos que, según el texto de ambos estatutos, claramente podrían existir circunstancias en las cuales se co-mete el delito de soborno agravado, y no así el de influencia indebida. Veamos.
Para conseguir que se dicte una sentencia por la conducta tipificada en el delito de soborno agravado es necesario probar los elementos siguientes: (1) que el sujeto es un funcionario o empleado público, jurado, árbitro o una persona autorizada en ley para oír o resolver una cuestión o *224 controversia; (2) que solicite, reciba o acepte la promesa de recibir; (3) dinero o un beneficio; (4) por omitir o retardar un acto regular de sus funciones o por ejecutar un acto contrario al cumplimiento regular de sus deberes, o con el entendido o en la inteligencia de que tal remuneración o beneficio habrá de influir en cualquier acto, decisión, voto o dictamen de dicha persona en su carácter oficial.
Como podemos observar, el delito de soborno agravado está dirigido a castigar al funcionario público o a la persona autorizada para resolver una controversia que, contrario a lo que se espera, omite, retarda o ejecuta irregularmente un acto regular de su cargo a cambio de una remuneración o beneficio de algún tipo. En primer lugar, cuando analizamos estos elementos, inferimos que ese delito solo requiere la existencia de dos sujetos: (1) el sujeto —activo—, al cual se le solicita u ofrece el soborno, aunque esto se realice por medio de un intermediario, y (2) el sujeto —activo— que es el funcionario público que solicita o recibe el soborno, a cam-bio de actuar de cierta manera antijurídica.
Por otra parte, para determinar que se ha cometido la conducta tipificada en el delito de influencia indebida es necesario probar lo siguiente: (1) que el sujeto de la conducta es una persona, sea o no funcionario público; (2) que ha obtenido o intentado obtener de otra persona cualquier beneficio; (3) que tal beneficio lo ha obtenido o intentado obtener asegurando o pretendiendo que se halla en aptitud de influir en cualquier forma en la conducta de un funcionario o empleado público en lo que respecta al ejercicio de sus funciones.
Para que se constituya el delito de influencia indebida, es necesaria la coexistencia de tres sujetos: (1) el sujeto —activo— que obtiene o trata de obtener un beneficio amparado en la promesa de que se halla en aptitud de influenciar a un empleado o funcionario público; (2) el sujeto —activo— del que se obtiene o se pretende obtener el beneficio a cambio de la promesa del primer sujeto, y (3) el *225 sujeto —pasivo— que es el empleado o funcionario público objeto de la promesa, independientemente de que la influencia que el primer sujeto aduce tener sobre este sea real o imaginaria.(23) Es pertinente señalar que el funcionario o empleado público puede conocer o ignorar sobre el negocio antijurídico entre los dos sujetos activos. De manera que, en este delito, el negocio antisocial que se busca prohibir es aquel en el cual el objeto negociado es la pro-mesa de un sujeto externo de que se halla capacitado y a disposición de influenciar el poder decisional de un empleado o funcionario público en su carácter oficial.
Los delitos de influencia indebida y soborno agravado están dirigidos a salvaguardar la pureza del desempeño de la función pública. Sin embargo, es necesario destacar que aunque estos delitos custodian el mismo interés, tienen propósitos muy distintos. Los primeros, soborno y soborno agravado, están dirigidos a sancionar la traición a la fiducia del país de una persona que, estando en una posición de poder decisional, actúa intencionalmente fuera de los parámetros de lo correcto a cambio de algún beneficio. En cambio, el delito de influencia indebida pretende proteger un interés que, aunque importante, no tiene el mismo peso social que el soborno, y por eso su pena es mucho menor. El delito de influencia indebida castiga la conducta exhibida por cualquier persona que obtenga o intente obtener cualquier beneficio a cambio de la promesa de que se halla apto para influir a un empleado o funcionario público en su carácter oficial. Así, para que este delito se configure, se requiere de un sujeto adicional a los requeridos en los delitos de soborno o soborno agravado, y que tal sujeto sea funcionario o empleado público. Ese será el sujeto pasivo quien, aunque podrá o no ser real, debe existir en la mente del sujeto que ofrece el beneficio a cambio de la promesa de *226 que otro ejerza su influencia sobre el sujeto pasivo. Mientras, en el delito de soborno agravado, basta con que solamente participen los dos sujetos activos.
Por otra parte, el delito de soborno requiere la condición de que una de las dos personas activas tenga o aparente tener el poder de conseguir el objeto del soborno, por sí solo, “id est”, sin la necesidad de intermediarios con acceso a ese poder. Sin embargo, en el caso del delito de influencia indebida, se hace innecesario ese poder directo, pues se trata de “vender” la promesa de que se tiene la “influencia” suficiente para conseguir que otro —un funcionario o empleado público— ejecute la acción “indebida”. Como podemos ver, no se trata de un elemento adicional de uno o del otro, sino de elementos totalmente distintos. Por esto, es claro que se puede cometer el delito de soborno o soborno agravado sin que se cometa el delito de influencia indebida, y viceversa.
Como se puede deducir, el delito de soborno en sus dos modalidades (Arts. 209-210) está dirigido a castigar la conducta de la persona que ocupa el cargo o la posición que le permite sobornar o aceptar el soborno.(24) Por otro lado, en el delito de influencia indebida, la persona imputada del delito evidentemente no tiene el poder de conseguir directamente lo indebido, y por eso la conducta que se sanciona o el sujeto de la imputación es el que hace la promesa u ofrecimiento de influenciar a aquel que presuntamente sí puede llevar a cabo la acción indebida.
Por ello, y toda vez que ambos delitos, el soborno y la influencia indebida, cuentan con elementos indispensables que son particulares de cada uno, no se puede concluir que el segundo sea un delito menor incluido en el primero. Por todo lo anterior, y porque el señor Soto Molina nunca fue acusado por el delito de influencia indebida, de *227 terminamos que su sentencia por ese delito no se realizó conforme a Derecho. Procede, entonces, absolverlo de ese delito. Por lo anterior, resulta innecesario expresarnos sobre el segundo señalamiento de error.
IV
El peticionario señala, a su vez, que el TPI y el TA erraron al resolver que la evidencia que presentó el Ministerio Público sostenía una sentencia por infracción al Art. 3.2(c) de la Ley de Etica Gubernamental. Además, nos señala que erraron al declarar culpable al peticionario por las in fracciones al Art. 213 del Código Penal de 1974 y al Art. 3.2(c) de la Ley de Ética Gubernamental sin que esa culpabilidad fuera establecida más allá de duda razonable como lo requiere el Art. II, Sec. 11 de la Constitución del Estado Libre Asociado de Puerto Rico.
Por tratarse de asuntos estrechamente relacionados con la discreción del Tribunal de Primera Instancia, pasaremos a discutirlos en conjunto.
En repetidas ocasiones nos hemos expresado en cuanto a la deferencia que los tribunales apelativos deben guardar por el aprecio de la prueba que hace el Tribunal de Primera Instancia.(25) Ello así porque el foro primario es el que se encuentra en mejor posición de valorarla y llegar a sus conclusiones. De ordinario, los tribunales apelativos no debemos intervenir con el ejercicio de la discreción de los foros de instancia, salvo que se demuestre que hubo un craso abuso de discreción, prejuicio, error manifiesto o parcialidad.(26)
Luego de examinar las circunstancias particulares del *228 presente caso, concluimos que no hubo abuso de discreción, prejuicio, error manifiesto o parcialidad en la decisión del foro primario en cuanto a la sentencia del señor Soto Molina de acuerdo con el citado Art. 3.2(c) de la Ley de Etica Gubernamental. Sin embargo, en cuanto al Art. 213, supra, hacemos referencia a la discusión en las partes anteriores de esta Opinión.
V
Por entender inmeritorios los demás señalamientos de error del peticionario según todo lo anteriormente ex-puesto, entendemos innecesario entrar a discutirlos.
Por todo lo anterior, se modifican las determinaciones de los foros “a quo”y se devuelve el caso al Tribunal de Primera Instancia para que se realice el Informe Pre-Sentencia conforme a lo aquí resuelto y se continúe con los procedimientos.

Se dictará Sentencia de conformidad.

La Jueza Presidenta Señora Fiol Matta y la Juez Asociada Señora Rodríguez Rodríguez concurrieron con el resultado sin opinión escrita. La Jueza Asociada Señora Pabón Charneco, el Juez Asociado Señor Estrella Martínez y la Jueza Asociada Oronoz Rodríguez no intervinieron.

 In re Franco Soto, 115 DPR 740, 752 (1984).

 Según tipificado en el Art. 213 del Código Penal de 1974 (33 LPRA see. 4364 (ed. 1974)).

 Según tipificado en el Art. 210 del Código Penal de 1974 (33 LPRA see. 4361 (ed. 1974)).

 Los hechos imputados fueron cometidos antes de que entrara en vigor el Código Penal de 2004.

 3 LPRA sec. 1823(c).

 ORAM tenía vigente un contrato para servicios de ornato y mantenimiento de áreas verdes con el municipio.

 En las acusaciones por violaciones al Art. 210 del Código Penal de 1974, supra, se le imputó al peticionario haber actuado en conjunto y común acuerdo con el Sr. Juan Salgado Agueda. No obstante, este coacusado falleció antes de la celebración del juicio.

 Const. ELA, LPRA, Tomo 1, ed. 2008, pág. 343.

 Pueblo v. Pagán Rojas, 187 DPR 465 (2012); Pueblo v. Vélez Rodríguez, 186 DPR 621 (2012); Pueblo v. González Olivencia, 116 DPR 614 (1985); Pueblo v. Santiago Cedeño, 106 DPR 663 (1978).

 Pueblo v. Oyola Rodríguez, 132 DPR 1064, 1071 (1993). Véanse, además: Pueblo v. Concepción Sánchez, 101 DPR 17, 19 (1973); Pueblo v. Ramos López, 85 DPR 576, 580 (1962).

 Pueblo v. Concepción Sánchez, supra.

 Pueblo v. Bigio Pastrana, 116 DPR 748, 758 (1985).

 Art. 209 del Código Penal de 1974 (33 LPRA sec. 4360 (ed. 1974)).

 Art. 7(16) del Código Penal de 1974 (33 LPRA sec. 3022(16) (ed. 1974)).

 Art. 7(6) del Código Penal de 1974 (33 LPRA sec. 3022(6) (ed. 1974)).

 D. Nevares-Muñiz, Código Penal de Puerto Rico revisado y comentado, Hato Rey, Instituto para el Desarrollo del Derecho, 2000, pág. 430.

 Pueblo v. Bigio Pastrana, supra, pág. 758.

 Pueblo v. Rosado Figueroa, 138 DPR 914, 919 (1995).

 Art. 210 del Código Penal de 1974, supra.

 213 del Código Penal de 1974, supra.

 Pueblo v. Luzón, 113 DPR 315, 320 (1982).

 Véanse: Green v. United States, 355 US 184 (1957); Pueblo v. Pérez Martínez, 84 DPR 181 (1961).

 El estatuto penaliza tratar o lograr un beneficio por pretender ejercer una influencia —real o imaginaria— en cualquier forma en la conducta de un funcionario, en lo que respecta al ejercicio de sus funciones.

 No ignoramos que el Art. 212 del mismo Código Penal castiga la conducta del que ofrece el soborno, cuando ese es el caso. 33 LPRA see. 4363 (ed. 1974).

 Pueblo v. De Jesús Mercado, 188 DPR 467, 477-479 (2013); Ramírez Ferrer v. Conagra Foods PR, 175 DPR 799, 810-811 (2009); Trinidad v. Chade, 153 DPR 280, 291 (2001); Flores v. Soc. de Gananciales, 146 DPR 45, 50 (1998); Pérez Cruz v. Hosp. La Concepción, 115 DPR 721, 728 (1984).

 Trans-Oceanic Life Ins. v. Oracle Corp., 184 DPR 689, 709 (2012). Véase, además, Lluch v. España Service Sta., 117 DPR 729, 745 (1986).