ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| EL PUEBLO DE PUERTO RICO<br><br>Apelado<br><br><br>v.<br><br><br>DOMINGO ROMÁN CHICLANA<br><br>Apelante | KLAN202401017 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Civil Núm.<br>K BD2023G0083 y<br>K BD2023G0084<br><br>Sobre:<br>Art. 182 C.P.<br>Art. 204 C.P. |

Panel integrado por su presidente, el Juez Salgado Schwarz, el Juez Monge Gómez y el Juez Sánchez Báez[1]

Juez Ponente, Sánchez Báez

**SENTENCIA**

En San Juan, Puerto Rico, a 27 de febrero de 2026.

Compareció el apelante, el Sr. Domingo Román Chiclana (en adelante, "señor Román Chiclana"), mediante un recurso de *Apelación Criminal* presentado el 14 de noviembre de 2024. Nos solicitó la revisión de la *Sentencia* que se dictó el 17 de octubre de 2024, por el Tribunal de Primera Instancia, Sala de San Juan. Mediante esta, el Foro Primario condenó al apelante a una pena de tres (3) años por infracción al Artículo 182 del Código Penal de Puerto Rico, Ley Núm. 146-2012, 33 LPRA sec. 5252, así como a tres años (3) por violación al Artículo 204 del referido Código, 33 LPRA sec. 5274, a ser cumplidas de forma concurrente entre sí bajo el régimen de sentencia suspendida.

Por los fundamentos que expondremos a continuación, **se confirma** la *Sentencia* apelada.

**-I-**

---

[1] Mediante la Orden Administrativa OATA-2025-002 emitida el 9 de enero de 2025 se designó al Juez Isaías Sánchez Báez en sustitución del Hon. Félix Figueroa Cabán.

Por hechos ocurridos el 6 de agosto de 2021, el Ministerio Público presentó dos (2) denuncias contra el señor Román Chiclana. Luego de la determinación de causa probable para acusar, se le acusó de infringir el Artículo 182 del Código Penal, *supra*, el cual tipifica el delito de apropiación ilegal agravada, y el Artículo 204 del referido Código, *supra*, el cual tipifica el delito de fraude en la ejecución de obras. En esencia, se le acusó porque, de manera ilegal, voluntaria, a propósito, y con conocimiento, se comprometió a ejecutar una obra, consistente en la construcción de doce (12) puertas y nueve (9) ventanas, en la residencia del perjudicado, el Sr. Luis Antonio Rivera Mejías (en adelante, "señor Rivera Mejías"). Sin embargo, luego de recibir siete mil dólares ($7,000.00), de un total pactado de dieciséis mil trescientos dólares ($16,300.00), y con el propósito de defraudar, incumplió con su obligación y no realizó la obra pactada. Además, se le imputó de privar al perjudicado del goce y disfrute de su propiedad, así como de apropiarse ilegalmente, mediante treta y engaño, del dinero entregado por el señor Rivera Mejías.

Luego de los trámites pertinentes, el 28 de junio de 2023 comenzó el juicio en su fondo por tribunal de derecho, el cual duró hasta el 24 de agosto de 2023. Aquilatada la prueba presentada en el juicio, el 17 de octubre de 2024, el Foro Primario dictó la *Sentencia* apelada. Mediante esta, el Foro *a quo* encontró culpable al señor Román Chiclana de: una (1) infracción al delito de fraude en la ejecución de obras, y una (1) violación al delito de apropiación ilegal agravada. Además, condenó al señor Román Chiclana a cumplir una pena de tres (3) años por cada delito, a ser cumplida de forma concurrente entre sí bajo el régimen de sentencia suspendida. Igualmente, ordenó al señor Román Chiclana la restitución de la cantidad de catorce mil dólares ($14,000.00).

Inconforme, el 14 de noviembre de 2024, el señor Román Chiclana presentó su *Apelación Criminal* ante nos, mediante el cual señaló la comisión de los siguientes errores:

A. Err[ó] el Honorable Tribunal de Primera Instancia al encontrar culpable al apelante en virtud de una prueba que no derrotó su presunción de inocencia y, mucho menos, estableció su culpabilidad más allá de duda razonable

B. El apelante no renuncia a presentar errores adicionales de derecho ante este Honorable Tribunal de Apelaciones – tras la debida evaluación del expediente de instancia y la totalidad de la prueba oral desfilada durante el juicio en su fondo – por el abogado apelativo a quien posteriormente se le asigne el presente caso.

Posteriormente, el 6 de octubre de 2025, el señor Román Chiclana presentó su *Alegato del Apelante*, en el cual hizo los siguientes señalamientos de error:

ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL ENCONTRAR CULPABLE AL SEÑOR ROMÁN CHICLANA DE LOS DELITOS DE APROPIACIÓN ILEGAL Y FRAUDE EN LA EJECUCIÓN DE OBRAS AÚN CUANDO EXISTE CONCURSO DE DISPOSICIONES PENALES ENTRE AMBOS DELITOS.

ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL ENCONTRAR CULPABLE AL SEÑOR ROMÁN CHICLANA AÚN CUANDO NO SE PROBÓ SU CULPABILIDAD MÁS ALLÁ DE DUDA RAZONABLE.

Por otra parte, el 5 de noviembre de 2025, el Ministerio Público, representado por la Oficina del Procurador General de Puerto Rico (en adelante "Procurador General"), presentó su *Alegato [del] Pueblo de Puerto Rico.*

Con el beneficio de la comparecencia de ambas partes, la transcripción de la prueba oral y los autos originales, procedemos a exponer la normativa jurídica aplicable al caso ante nuestra consideración.

**-II-**

**A. Presunción de inocencia y duda razonable**

La Constitución de Puerto Rico reconoce en la Sección 11 del Artículo II el derecho fundamental de la presunción de inocencia. Const. PR art. II, sec. 11. Esto es que un acusado no tiene la obligación de presentar prueba en su defensa o de que es

inocente. *Pueblo v. Meléndez Monserrate*, 214 DPR 547, 559 (2024). Entiéndase, le corresponde al Estado la obligación de presentar evidencia y de cumplir con la carga de la prueba para establecer la culpabilidad del acusado. *Pueblo v. Irizarry*, 156 DPR 780, 786-787 (2002). A los fines de rebatir esa presunción, las reglas 110 de Procedimiento Criminal y de Evidencia requieren que la culpabilidad de una persona acusada sea probada más allá de duda razonable. 34 LPRA Ap. II, R. 110 y 32 LPRA Ap. VI, R. 110. Para cumplir con ese estándar, y por consiguiente controvertir la presunción constitucional, el Ministerio Público tiene que presentar prueba suficiente y satisfactoria sobre: (1) cada uno de los elementos del delito, (2) su conexión con el acusado y (3) la intención o negligencia criminal de este. *Pueblo v. Meléndez Monserrate*, supra, pág. 560. Cumplir con esa máxima es un imperativo del debido proceso de ley. *Pueblo v. Irizarry*, supra, pág. 786.

Ahora bien, el estándar probatorio de más allá de duda razonable no requiere que se tenga que probar el caso criminal con certeza matemática. *Pueblo v. Toro Martínez*, 200 DPR 834, 856 (2018); *Pueblo v. Bigio Pastrana*, 116 DPR 748, 761 (1985). Lo que nuestro ordenamiento jurídico requiere es prueba suficiente y satisfactoria, es decir, que produzca certeza o convicción moral en una conciencia exenta de preocupación o en un ánimo no prevenido. *Pueblo v. Toro Martínez*, supra. Por ende, la duda razonable que impide encontrar culpable al acusado no es una mera duda especulativa o imaginaria, o cualquier duda posible; es la insatisfacción racional de la conciencia del juzgador con la prueba presentada producto de todos los elementos de juicio del caso. *Íd.*, Véase, además, *Pueblo v. Irizarry*, supra, pág. 788; *Pueblo v. Bigio Pastrana*, supra, pág. 761. Es decir, "la duda razonable debe ser el resultado de la consideración serena, justa e imparcial de la totalidad de la evidencia del caso o de la falta de suficiente prueba

en apoyo de la acusación". *Pueblo v. Irizarry*, supra. Como bien dispuso el Tribunal Supremo: "En concreto, la duda razonable existe cuando el juzgador de los hechos siente en su conciencia insatisfacción o intranquilidad con la prueba de cargo presentada". *Pueblo v. García Colón I*, 182 DPR 129, 175 (2011). De igual modo ocurre "cuando el juzgador queda insatisfecho con la prueba presentada". *Pueblo v. Santiago*, 176 DPR 133, 142 (2009).

La determinación de si se probó la culpabilidad del acusado más allá de duda razonable es revisable en apelación. Ahora bien, en esa delicada función revisora se debe tener presente que "la apreciación de la prueba corresponde, en primera instancia, al foro sentenciador por lo cual los tribunales apelativos sólo intervendremos con dicha apreciación cuando se demuestre la existencia de pasión, prejuicio, parcialidad o error manifiesto". *Pueblo v. Irizarry*, supra, págs. 788-789. Véase, además, *Pueblo v. Maisonave Rodríguez*, 129 DPR 49 (1991). Asimismo, podremos intervenir cuando la apreciación de la prueba no concuerde con la realidad fáctica o esta sea inherentemente imposible o increíble. *Pueblo v. Irizarry*, supra, pág. 789.

Esta norma se fundamenta en el hecho de que "los foros de instancia están en mejor posición para evaluar la prueba desfilada, pues tienen la oportunidad de observar y escuchar a los testigos y, por ello, su apreciación merece gran respeto y deferencia". *Pueblo v. Acevedo Estrada*, 150 DPR 84, 99 (2000).

De otro lado, nuestro ordenamiento jurídico no requiere una cantidad específica de testigos para probar la culpabilidad de un acusado más allá de duda razonable. *Pueblo v. Toro Martínez*, supra, pág. 859. Al contrario, el testimonio de un testigo por sí solo, de ser creído, es suficiente para sostener un fallo condenatorio aun cuando no fue un testimonio perfecto. Le corresponde al foro primario resolver los asuntos de credibilidad de un testigo cuando haya

partes de su testimonio que sean aceptables. *Íd.*, pág. 860. Véase, además, *Pueblo v. Chévere Heredia*, 139 DPR 1, 15-16 (1995). De ese modo, si un testigo se contradice, lo que está en juego es su credibilidad y es al foro primario a quien le corresponde resolver el valor probatorio de su testimonio. *Pueblo v. Toro Martínez*, supra, pág. 861. Adviértase que el testimonio perfecto no existe, y en lugar de ser indicativo de la verdad, es altamente sospecho, pues generalmente es producto de fabricación. *Pueblo v. Cabán Torres*, 117 DPR 645, 656 (1986).

**B. Fraude en la Ejecución de Obras**

El delito de fraude en la ejecución de obras se encuentra tipificado en el Artículo 204 del Código Penal, 33 LPRA sec. 5274. Este reza de la siguiente manera:

> Toda persona que se comprometa a ejecutar cualquier tipo de obra y que, luego de recibir dinero como pago parcial o total para ejecutar el trabajo contratado, con el propósito de defraudar incumple la obligación de ejecutar o completar la obra según pactada, será sancionada con pena de reclusión por un término fijo de tres (3) años. Si la persona convicta es una persona jurídica será sancionada con pena de multa hasta diez mil dólares ($10,000).

> En todos los casos el tribunal ordenará, además, que la persona convicta resarza a la parte perjudicada por el doble del importe del dinero recibido como pago parcial o total para ejecutar el trabajo contratado.

> El tribunal a su discreción, podrá ordenar la suspensión o revocación de licencia, permiso o autorización conforme los Artículos 60 y 78.

*Íd.*

Respecto a los elementos que el Ministerio Público debe probar para que se configure dicho delito, nuestro Tribunal Supremo expresó lo siguiente:

> [P]ara que a una persona se le pueda imputar la comisión de este delito tienen que estar presentes los elementos siguientes: (1) [U]na definición de cuál era la obra y en los términos y las condiciones pactados para ejecutarla; (2) la persona contratada debe haber recibido dinero como pago total o parcial para ejecutar la obra; (3) el incumplimiento por parte de dicha persona con los términos y las condiciones pactadas para ejecutar la obra, y (4) la intención o el propósito específico de la persona de defraudar a aquellas con quienes se obligó.

*Pueblo v. Sierra Rodríguez*, 137 DPR 903, 909-910 (1995).

Por tanto, nuestro Máximo Foro aclaró que el delito de fraude en la ejecución de obras es uno de intención específica, por lo que este requiere que el acusado "haya actuado con la intención específica de defraudar". *Íd.*, pág. 910. En específico, y haciendo referencia al Artículo 188A del antiguo Código Penal de Puerto Rico del 1974, el tipificaba el delito de fraude en la ejecución de obras, el Tribunal Supremo aclaró que la intención del legislador al codificar lo anterior como un delito consistía en "penalizar y desalentar la práctica de aquellas personas que, con la intención de defraudar, toman dinero, como pago parcial o total, para realizar una obra y luego no la ejecutan o no la completan". *Íd.*, pág. 914. En cuando al concepto de "defraudar", el Artículo 14 (v), 33 LPRA sec. 5014 (v), lo define como "el acto cometido mediante ardid, simulación, trama, treta o mediante cualquier forma de engaño".

## C. Apropiación Ilegal Agravada

El delito de apropiación ilegal está codificado en el Artículo 181 del Código Penal, 33 LPRA sec. 5251. A su vez, el referido Artículo lo define de la siguiente manera:

> Incurrirá en delito menos grave, toda persona que ilegalmente se apropie sin violencia ni intimidación de bienes muebles pertenecientes a otra persona en cualquiera de las siguientes circunstancias:
>
> (a) cuando se toma o sustrae un bien sin el consentimiento del dueño, o
>
> (b) cuando se apropia o dispone de un bien que se haya recibido en depósito, comisión o administración, o por otro título que produzca obligación de entregarlos o devolverlos, o
>
> (c) cuando mediante engaño se induce a otro a realizar un acto de disposición de un bien.
>
> El tribunal también podrá imponer la pena de restitución.

*Íd.*

Ahora bien, se configurará el delito en su modalidad agravada cuando concurran los siguientes elementos:

> Toda persona que cometa el delito de apropiación ilegal descrito en el Artículo 181, y se apropie de propiedad o fondos públicos, será sancionada con pena de reclusión por un término fijo de quince (15) años. Toda persona que se

apropie de bienes cuyo valor sea de diez mil dólares ($10,000) o más será sancionada con pena de reclusión por un término fijo de ocho (8) años. Si la persona convicta es una persona jurídica será sancionada con pena de multa hasta treinta mil dólares ($30,000).

Si el valor del bien apropiado ilegalmente es menor de diez mil (10,000) dólares, pero mayor de quinientos (500) dólares, será sancionada con pena de reclusión por un término fijo de tres (3) años. Si la persona convicta es una persona jurídica será sancionada con pena de multa hasta diez mil dólares ($10,000).

[...].

Artículo 182 del Código Penal, 33 LPRA sec. 5252.

A su vez, el Artículo 14 (g) del Código Penal, 33 LPRA sec. 5014 (g), indica que el acto de "apropiar" comprende "malversar, defraudar, ejercer control ilegal, usar, sustraer, apoderarse, o en cualquier forma hacer propio cualquier bien o cosa que no le pertenece, en forma temporal o permanente". De igual forma, el mismo Artículo, en su inciso (j), define que constituirán "bienes muebles" cualquier objeto que sea susceptible de apropiación, entre otras. *Íd.*

**D. Concurso de Aparente de Disposiciones Penales**

Se considera que existe un concurso aparente de disposiciones penales "cuando más de un precepto penal concurre en su aplicación a un hecho delictivo, lo cual da lugar a un conflicto en cuando a cuál de las disposiciones penales habrá de aplicar". D. Nevares-Muñiz, *Derecho Penal Puertorriqueño*, 7ma ed., San Juan, Instituto para el Desarrollo del Derecho, Inc., 2015, pág. 129. Es decir que, bajo este supuesto, una sola conducta aparenta infringir más de un delito que protege el mismo bien jurídico. *Pueblo v. Álvarez Vargas*, 173 DPR 587, 593 (2008). Ante este escenario, "lo correcto es procesar al acusado por un solo delito. No se trata, por tanto, de un principio de determinación de la pena, sino de una forma de interpretación de la ley penal". L.E. Chiesa Aponte, *Derecho Penal Sustantivo*, 2da ed., Estados Unidos, Publicaciones JTS, 2013, pág. 81.

Ahora bien, la normativa referente a su aplicación se divide en tres (3) modalidades: la especialidad, la consunción y la subsidiariedad. A tales efectos, el Artículo 9 del Código Penal, 33 LPRA sec. 5009, tipifica estas modalidades de la siguiente manera:

> Cuando la misma materia se regula por diversas disposiciones penales:
>
> (a) La disposición especial prevalece sobre la general.
>
> (b) La disposición de mayor alcance de protección al bien jurídico absorberá la de menor amplitud, y se aplicará la primera.
>
> (c) La subsidiaria aplicará sólo en defecto de la principal, si se declara expresamente dicha subsidiariedad, o ésta se infiere.

En lo pertinente a la controversia que nos ocupa, el principio de especialidad está codificado en el inciso (a) de dicho Artículo. Este principio establece "que cuando en el ordenamiento jurídico existen dos o más disposiciones estatutarias que regulan en aparente conflicto la misma materia, la disposición especial prevalecerá sobre la general". *Pueblo v. Pérez Delgado*, 211 DPR 654, 670 (2023). Ambas materias en conflicto no pueden ser aplicadas de manera simultánea. *Íd.*; *Pueblo v. Vega Feliciano*, 203 DPR 868, 879 (2020). De este modo, será de aplicación el principio de especialidad "cuando un precepto reproduce las características de otro, añadiéndole además otras específicas". Chiesa Aponte, *op. cit.*, pág. 81.

Para determinar si ambos estatutos son mutuamente excluyentes, habrá que analizar si la conducta prohibida, así como los elementos de ambos delitos, aparentan ser los mismos. *Pueblo v. Pérez Delgado*, supra, pág. 670. De ser así, se determinará la especialidad de un delito sobre el otro basado en un análisis sobre el trato especial que le otorgó el legislador para la situación específica que comprende. *Íd.* A tales efectos, el tratadista Santiago Mir Puig explicó lo siguiente:

> Un precepto es más especial que otro cuando requiere, además de los presupuestos igualmente exigidos por este segundo, algún otro presupuesto adicional: si un precepto requiere los presupuestos a + b y otro los presupuestos a + b + c, el segundo es más especial que el primero.

S. Mir Puig, *Derecho Penal: Parte General*, 10ma. ed., Barcelona, Ed. Reppertor, 2019, págs. 683-684.

Por otra parte, el inciso (b) del Artículo 9 del Código Penal, *supra*, comprende el principio de consunción. Este "[s]e trata, de ordinario, de ofensas graves cuya ocurrencia generalmente supone la comisión de otras ofensas menos graves". Chiesa Aponte, *op. cit.*, pág. 82. El principio de consunción se puede dar ante dos escenarios: (1) cuando un hecho o delito acompaña normalmente a otro, o (2) cuando los actos posteriores quedan consumidos dentro del delito de mayor alcance de protección al bien jurídico. Nevares-Muñiz, *op. cit.*, pág. 133. A esos efectos, la Prof. Nevares-Muñiz explica lo siguiente sobre este principio:

> Se trata de hechos que por sí solo son delito, pero que cuando se dan junto a otros hechos, dejan de estimarse por separado, porque el sentido de la ley implica que el juicio desvalorativo está consumido por la desvaloración del hecho del que son antecedente o consiguiente, según sea el caso.

Nevares-Muñiz, *op. cit.*, pág. 133.

**-III-**

En su *primer señalamiento de error* el apelante alegó que el Tribunal de Primera Instancia erró al encontrarlo culpable por el delito de apropiación ilegal agravada y el delito de fraude en la ejecución de obra. Arguyó que existía un concurso aparente entre ambos delitos, ya que alegadamente estos se encontraban en una relación de especialidad y consunción. Por otro lado, el Procurador General adujo que los delitos imputados protegen bienes jurídicos distintos, así como elementos diferentes.

Conforme al derecho antes esbozado, existe un concurso aparente cuando una sola conducta parece infringir más de un delito que protege el mismo bien jurídico. En lo pertinente al caso que nos ocupa, este concurso se puede atender bajo el principio de

especialidad, en el cual la disposición especial prevalecerá sobre la general. Ante este escenario, ambos delitos ostentan los mismos elementos, pero el especial tiene características específicas adicionales. De igual forma, se puede dar el concurso aparente bajo el principio de la consunción, en el que el precepto de mayor alcance absorbe el menor. Es decir que se trata de un delito cuya gravedad supone la comisión de otros delitos menores.

Ahora bien, en el presente caso, el apelante fue condenado por el delito de apropiación ilegal agravada y fraude en la ejecución de obras. Luego de evaluar el derecho aplicable, concluimos que no existe el concurso aparente entre ambos delitos. Al evaluar estas disposiciones bajo el crisol doctrinario del principio de especialidad, vemos que no nos encontramos ante delitos que tengan los mismos elementos, y que una de las disposiciones tenga características adicionales. El delito de fraude en la ejecución de obra busca penalizar la conducta de defraudar a la persona con la que ha pactado la realización de una obra. Por tal razón, el referido delito requiere que se cometa con el propósito de defraudar al perjudicado. En contraste, el delito de apropiación ilegal, en su modalidad, agravada busca castigar el acto de apropiarse de un bien mueble perteneciente a otra persona. Por lo cual, es nuestra apreciación que ambos delitos buscan proteger bienes jurídicos distintos.

Tampoco consideramos que sea de aplicación el principio de la consunción. Entre los dos delitos en controversia, no surge que nuestro ordenamiento jurídico considere que uno es más grave que el otro. Incluso, en este caso, ambos delitos conllevan la misma pena de tres (3) años, circunstancia que nos lleva a interpretar que la intención del legislador de atribuirles un grado equivalente de gravedad, sin establecer jerarquía punitiva entre uno y otro. Siendo así, es nuestra apreciación que, contrario a lo argüido por el

apelante, el delito de fraude en la ejecución de obras no absorbe el delito de apropiación ilegal.

De este modo, determinamos que no se cometió el primer señalamiento de error. Además, cabe resaltar que de los autos ante nuestra consideración no se desprende que el apelante hubiese planteado dicho señalamiento ante el Tribunal de Primera Instancia. Por ello, resolvemos que el apelante renunció al referido argumento. En consecuencia, no colocó al Tribunal de Primera Instancia en posición de atender su planteamiento, y a esta Curia en condición de revisar su determinación.

En su *segundo señalamiento de error*, el apelante cuestiona que el Tribunal de Primera Instancia lo haya encontrado culpable, más allá de duda razonable, por los delitos imputados. A esos efectos, el apelante alegó que no pudo cumplir las obras pactadas por las propias acciones del señor Rivera Mejías, así como que no se probó la intención de defraudar que requiere el Artículo 204 del Código Penal, *supra*. En contraste, el Procurador General alegó que la prueba de cargo logró demostrar más allá de duda razonable todos los elementos de los delitos imputados.

Pese a lo que declaró el apelante en el juicio en su fondo,[2] el Tribunal de Primera Instancia le otorgó credibilidad a la prueba desfilada por el Ministerio Público. Debido a que esta Curia debe otorgarle deferencia a la apreciación de la prueba hecha por el Foro apelado, procedemos a resumir los hechos según fueron adjudicados por este.

El 6 de agosto de 2021 el señor Rivera Mejías pactó con el apelante la remoción e instalación de doce (12) puertas, nueve (9) ventanas y la remodelación de un baño, así como la limpieza de los escombros que se generaran, la adaptación de los huecos

---

[2] Transcripción de la prueba oral, págs. 104-175.

correspondientes con su empañetado y pintura.[3] El mismo día, el señor Rivera Mejías le entregó un depósito al señor Román Chiclana siete mil dólares ($7,000.00) en efectivo, de un total de dieciséis mil trescientos dólares ($16,300.00).[4] De este modo, el apelante le informó al señor Rivera Mejías que comenzaría las obras acorda das en dos (2) semanas.[5]

El señor Rivera Mejías declaró que, el primer día, el apelante trabajó aproximadamente dos (2) horas, en las cuales removió de dos (2) a tres (3) ventanas.[6] Igualmente, la esposa del señor Rivera Mejías, la Sra. Flora Martínez Rosario (en adelante, "señora Martínez Rosario"), indicó que el apelante solo fue a trabajar dos (2) veces.[7] Además, ambos señalaron que, contrario a lo pactado, el señor Román Chiclana dejó el área desorganizada con escombros esparcidos por la casa.[8] Más adelante, y debido a que el apelante se quejaba de que tenía problemas con sus empleados, el señor Rivera Mejías decidió contratar al Sr. Carlos Rubén López Rosa (en adelante, "contratista"), para que este se ocupara de terminar de demoler los huecos y de adaptarlos para las ventanas nuevas, así como del empañetado, la limpieza y de pintar las paredes.[9] De este modo, el señor Rivera Mejías le informó al apelante que prefería que este se dedicara a la fabricación de las puertas y ventanas, al igual que de su instalación.[10] Asimismo, el señor Rivera Mejías le pagó al apelante doscientos dólares ($200.00) por el trabajo que ya este había realizado.[11]

En septiembre de 2021, el contratista comenzó su trabajo, y para octubre de 2021, este había demolido y empañetado los huecos

---

[3] *Íd.*, pág. 24; pág. 79; pág. 93.
[4] *Íd.*, pág. 25; pág. 72; pág. 93-94.
[5] *Íd.*, pág. 26.
[6] *Íd.*, págs.27-28.
[7] *Íd.*, pág. 94.
[8] *Íd.*, pág. 27 y pág. 94.
[9] *Íd.*, pág. 31; pág. 81; pág. 94.
[10] *Íd.*, pág. 29.
[11] *Íd.*, pág. 29 y pág. 95.

para las puertas y ventanas.[12] Por su parte, el señor Rivera Mejías indicó que le colocó en una de las paredes, el número de teléfono del contratista para que, cuando el señor Román Chiclana fuese a rectificar las medidas, pudiese comunicarse con este para cualquier arreglo.[13]

Así las cosas, en octubre de 2021, el señor Román Chiclana acudió a la residencia del señor Rivera Mejías para tomar nuevamente las medidas pertinentes.[14] La señora Martínez Rosario declaró que, en este momento, comenzaron las excusas por parte del apelante, entre ellas, que no tenía quién le trabajara, que se le había dañado la guagua, que estuvo enfermo, que tenía otros proyectos, y que estaba corriendo un maratón. [15] Asimismo, el señor Rivera Mejías expresó que intentó llamarlo y visitarlo a su casa, pero no logró comunicación con el señor Román Chiclana.[16] Más adelante, en enero de 2022, el señor Román Chiclana le informa al señor Rivera Mejías que necesita tomar otra vez las medidas, y, por consiguiente, se le dio acceso a la propiedad nuevamente.[17]

Posteriormente, en marzo de 2022, el señor Román Chiclana le indica por tercera vez al apelante que necesita tomar las medidas otra vez, y el señor Rivera Mejías le volvió a dar acceso para ello.[18] En esta ocasión, el señor Román Chiclana se llevó unas herramientas que había dejado en dicha propiedad, así como que le informó al señor Rivera Mejías que este no fabricaba ventanas y puertas, sino que se las ordenaba a una tercera persona que "le qued[ó] mal", pero que se iba a encargar de buscar otra opción.[19] Sin embargo, el señor Rivera Mejías no logró comunicación con el

---

[12] *Íd.*, págs. 31-32 y pág. 81.
[13] *Íd.*, págs. 31-32 y pág. 97.
[14] *Íd.*, pág. 32.
[15] *Íd.*, págs. 98-99.
[16] *Íd.*, págs. 32-33.
[17] *Íd.*, pág. 33.
[18] *Íd.*, pág. 34.
[19] *Íd.*, págs. 34-35.

apelante hasta septiembre de 2022, cuando, el señor Román Chiclana le envió unas capturas de pantalla por mensajes de *Whatsapp*, mostrándole los textos que alegadamente evidenciaban que la persona contratada para la fabricación de las puertas y ventanas le había quedado mal.[20] El señor Rivera Mejías le insistió en que quería su mercancía, y en la alternativa, la devolución del dinero invertido.[21] No obstante, el señor Román Chiclana insistió en que le diera otra oportunidad, y el señor Rivera Mejías accedió.[22]

Posteriormente, el señor Román Chiclana solicitó, por cuarta vez, tomar las referidas medidas porque había conseguido a otra persona que fabricara las puertas y ventanas.[23] Tras no haber ningún avance en la obra, en noviembre de 2022, el señor Rivera Mejías publicó en *Facebook* un retrato del señor Román Chiclana, diciendo que si sabía de él, que le dijeran que lo llamara.[24] Luego hubo unas comunicaciones con el apelante, y, el 7 de diciembre de 2022, el señor Rivera Mejías acudió a la Policía de Puerto Rico, en donde lo atendió el agente Edwin Álvarez Mercado (en adelante, "agente Álvarez Mercado").[25]

El agente Álvarez Mercado declaró que citó al apelante, y que este compareció el 14 de diciembre de 2022.[26] Antes de interrogarlo, el agente Álvarez Mercado le hizo las advertencias Miranda al señor Román Chiclana, y este las leyó y las firmó.[27] Durante el interrogatorio, el señor Román Chiclana le expresó que al agente Álvarez Mercados que las mochetas en la residencia en controversia no estaban hechas. Sin embargo, el agente Álvarez Mercado testificó que corroboró que estas se habían completado.[28] De igual forma, el

---

[20] *Íd.*, pág. 36.
[21] *Íd.*
[22] *Íd.*
[23] *Íd.*, pág. 37.
[24] *Íd.*, págs. 37-38.
[25] *Íd.*, pág. 39 y pág. 71.
[26] *Íd.*, pág. 72.
[27] *Íd.*, pág. 75.
[28] *Íd.*, pág. 77.

señor Román Chiclana indicó que devolvería el dinero, pero solicitó que se le diera un tiempo razonable.[29] El agente Álvarez Mercado consultó con el señor Rivera Mejías, y le concedió treinta (30) días al apelante para cumplir con el pago.[30] Más adelante, el apelante llamó al agente Álvarez Mercado solicitando un tiempo adicional, y accedió a darle quince (15) días más.[31] Más adelante, el 20 de marzo de 2023, el apelante volvió a pedir una oportunidad para hacer la devolución, pero se le negó, por lo que se presentó el caso.[32] A su vez, el agente Álvarez Mercado declaró que, entre diciembre de 2021 hasta el 7 de diciembre de 2022, el señor Rivera Mejías le hizo múltiples reclamos, tanto por mensajes de texto como por llamadas, al apelante sobre la devolución del dinero, y que el señor Román Chiclana nunca llevó a cabo la obra pactada.[33]

Ahora bien, respecto al delito de fraude en la ejecución de obra, surge de la prueba creída por el Tribunal de Primera Instancia que el Ministerio Público logró probar los elementos del delito. En específico, se demostró que existía un pacto entre el apelante y el señor Rivera Mejías para la ejecución de una obra, la cual consistía principalmente en la instalación de unas puertas y ventanas. Para ello, el señor Rivera Mejías pagó un depósito de siete mil dólares ($7,000.00), según fue solicitado por el apelante. El señor Román Chiclana nunca cumplió con la obra pactada, ya que la instalación de las ventanas y puertas no se llevó a cabo.

Asimismo, coincidimos con el Foro Primario en cuanto a que se probó el propósito de defraudar. El apelante trabajó dos (2) días y desapareció. Surge de la transcripción de los procedimientos, así como de los autos, que la comunicación hacia el señor Román Chiclana era complicada, lo cual dificultaba conocer el estatus de

---

[29] *Íd.*, pág. 24 y pág. 76.
[30] *Íd.*, pág. 77.
[31] *Íd.*
[32] *Íd.*, pág. 78.
[33] *Íd.*, pág. 91.

las obras pagadas por el señor Rivera Mejías. A su vez, emana del expediente que cada vez que se le pedía al apelante que tomara acción sobre su incumplimiento, este presentaba excusas para continuar su inacción. De igual forma, el señor Rivera Mejías le dio múltiples oportunidades para cumplir con la obra o devolverle el dinero invertido, pero aun así, este incumplió. Incluso, después de que el señor Rivera Mejías acudió ante el agente Álvarez Mercado, se le dio la oportunidad de cumplir con la devolución de los siete mil dólares ($7,000.00), pero el apelante nunca los pagó. Por todo lo anterior, concluimos que se probó más allá de duda razonable la infracción al Artículo 204 del Código Penal, *supra.*

Por otra parte, es nuestra apreciación que también se probó más allá de duda razonable la comisión del delito de apropiación ilegal, en su modalidad agravada. De la prueba creída por el Tribunal de Primera Instancia, emana que el señor Román Chiclana se apropió, sin violencia ni intimidación, de siete mil dólares ($7,000.00) pertenecientes al señor Rivera Mejías. Tal y como mencionamos anteriormente, el señor Rivera Mejías le dio este dinero, como pago en depósito para la referida obra. A pesar de que se le solicitó en varias ocasiones la devolución de dicha cantidad, el señor Román Chiclana nunca los entregó. Por ende, concurrimos con el Tribunal de Primera Instancia en cuanto a que se configuró el delito tipificado en el Artículo 182 del Código Penal, *supra.*

Ante ello, y a la luz de la ausencia de pasión, prejuicio, parcialidad o error manifiesto en la apreciación de la prueba, este Tribunal de Apelaciones debe otorgarle total deferencia al fallo emitido por el Tribunal de Primera Instancia. Por consiguiente, determinamos que tampoco se cometió el segundo señalamiento de error.

**-IV-**

Por los fundamentos antes esbozados, **confirmamos** la *Sentencia* apelada.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda.  Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones